STATE OF HAWAII, Plaintiff-Appellee, *v.* WALTER CLYDE MITCHELL, also known as Clyde, Defendant-Appellant

NO. 7044

AUGUST 5, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendant Appellant Walter Clyde Mitchell, convicted of Promoting a Dangerous Drug in the Second Degree after a jury trial in April 1978, appeals from the judgment filed June 2, 1978. The primary issue on this appeal is whether Mitchell's constitutional[1] right to a speedy trial was violated.

---

[1] Rule 48, Hawaii Rules of Penal Procedure, is inapplicable to this case. The arrest and indictment preceded the effective date (January 1, 1977) of the rule. *See* rule 48, Hawaii Rules of Penal Procedure.

Mitchell was convicted of selling heroin to an undercover police detective. The offense occurred on August 10, 1976. He was indicted on December 8, 1976, when the detective and another police officer emerged from their undercover capacity to testify before the Oahu grand jury about drug-related offenses. Mitchell was arrested on December 12, 1976 and released on his own recognizance by an order dated December 23, 1976.

Mitchell's trial was originally scheduled for the week of April 18, 1977. On April 13 and 14, 1977, Mitchell, through his counsel, filed four motions. Two are pertinent here. The first was a motion to consolidate Mitchell's case with two cases against other defendants involving the same informer and the same police tactical operation. The second was a motion to continue Mitchell's trial until sometime in June 1977 on the ground that an expert witness crucial to his case would be on the mainland until May 24, 1977. A hearing on all four motions was held on April 18, 1977 before Judge Toshimi Sodetani. The motion to continue was granted without opposition. The court indicated that its June and July calendar was mostly full and that although there was a possibility of an early June trial date, it might have to go to August. Mitchell's counsel said that that was all right with Mitchell. No trial date was set.

Judge Sodetani requested memoranda of law from both parties on the motion to consolidate, which were submitted as requested by May 2, 1977. The motion to consolidate was scheduled for July 26, 1977 and was continued to allow newly assigned prosecuting attorneys to submit additional legal arguments. The State filed a supplemental memorandum in opposition to the motion to consolidate on August 5, 1977.

On October 4, 1977, a further hearing on the motion to consolidate was held before Judge John C. Lanham, to whom Mitchell's case had been transferred. Christopher D. Ferrara, Mitchell's counsel, and Larry C. Y. Lee, counsel for the two other defendants seeking consolidation, were present. After argument, the court indicated its inclination to deny the motion to consolidate and raised the question of setting trial dates for the three defendants. Counsel for the other two defendants indicated that his clients, who were still in the

United States Army, had been passed up on promotions and pay because of the pending trial. Mitchell had been discharged from the Army in June 1977.

THE COURT: What dates — who wants to go first? Mitchell? I can see some good and bad points in going first.

MR: FERRARA: Your Honor, I would defer to Mr. Lee. His people are still in the service. My client has been discharged and he has nothing really pressing and —

THE COURT: Is anybody in jail at the present time?

MR. FERRARA: No, sir.

THE COURT: What caused these trials to last so long?

MR. FERRARA: We may get at that, sir, in our next motion.

Both defense counsel then indicated their intention to file motions to dismiss based on violation of the right to speedy trial. Mr. Lee indicated that he would need "perhaps a month" to prepare for trial. Mr. Ferrara was silent. Addressing himself to the court clerk, Judge Lanham said, "Don't set it for trial unless we hear the motion. Put it about November 21 — block out that space. Put these behind [another case] as a backup."

THE CLERK: November 28, as a backup.

THE COURT: Don't delay your motion for a speedy trial. I notice a lot of people file a motion for speedy trial and just file it and they don't set it up for a hearing or anything. In my view, they might as well not file it, if you really want a speedy trial.

Mitchell's counsel filed the motion to dismiss on November 15, 1977. A hearing on the motion was unavailable until December 6, 1977. The trial was rescheduled for January 30, 1978. At the December 6 hearing:

THE COURT: Okay. Here's the thing I can't understand, though. On November 15th you filed a motion to dismiss indictment. And the motion was set for hearing on December 6th. How could we possibly have trial on November 28th?

MR. FERRARA: Okay. That's interesting, your

Honor. That took place in your chambers.

THE COURT: I think that's the only reason we took it off was because of the motion.

MR. FERRARA: No, sir. The — I had to get a date in order to get it filed-stamped. I talked to your clerk. She was totally back-logged as to all her entries. There was no way. And I reminded — she said the earliest we can get it in on was the 8th [*sic?*]. I said, but, yeah, we go to trial on the 30th [*sic?*].

She says, "Well, I can't give you a trial on the 30th." I said, "Somehow you are going to have to do it." I said, "Well, I need it file-stamped." So I went ahead and took the December 8th [*sic?*] date.

Mitchell testified at the December 6 hearing. Defense counsel offered to stipulate that Mitchell remembered the events of August 10, 1976. It was his difficulty in remembering events before and after that date which the defense alleged was prejudicing his case. In making this argument, defense counsel stressed that the "total overall delay", both pre- and post-indictment was involved.

Mitchell testified that when he obtained legal counsel in December 1976, he didn't remember too much of what had transpired in August. His memory of events on the date of the offense, but not of surrounding dates, had been helped somewhat by review of the police reports and conversations with counsel.

He also testified that at the time of indictment, he was serving in the Army as a medical specialist at Tripler Hospital. As a result of the arrest, he was "labelled as a drug pusher" and harassed by officers and staff members. He was not trusted as much as he had been. His room was searched. Eventually, he asked to be discharged. Once discharged, bail was required, as his military ties had been a basis for release on his own recognizance. His family, he said, was shocked. He had never been in "any trouble" prior to this charge. After release from the service, he had sought work unsuccessfully and attributed the rejections he encountered to the pending felony charge, as some of the applications had questions regarding that matter.

Mitchell also alleged that two or three former co-workers at the hospital who were potential character witnesses had been transferred to unknown mainland duty stations while the trial was pending. He was unable, he said, to recall their names or genders and had not identified them to his counsel in December 1976. At the time of the motion hearing, he was a self-employed salesman of a diet product and was attending school part-time.

Judge Lanham's Order Denying Motion to Dismiss Indictment, filed on December 21, 1977, states that "the evidence and the file show no denial of defendant's rights" to a speedy trial and to due process of law "for reasons basically the same as those set forth in the decision on a similar motion" filed in the cases of the other two defendants who had also sought consolidation. That decision was attached to the decision in the instant case. Noting a sequence of dates between April and November 1977 on which motions, memoranda and orders were filed, the court stated:

> In my opinion this shows an active file and is not the type of case where the court can honestly say there was any undue delay to the extent that defendants were denied a speedy trial. It is also noted that the defendants were not in jail or restrained of their liberty while awaiting trial,[2] and were represented by counsel throughout, and never indicated any desire to the court for a speedy trial that is shown in the record. As far as the court is concerned it has not been shown where any real prejudice was caused to defendants by any delay.

\* \* \* \* \*

Defendants' claim that their memory has dimmed is related to the pre-indictment period, but this is not very plausible when considered in connection with the nature of the offense. One should have no difficulty remembering whether or not he sold heroin to the undercover agent

---

[2] Mitchell was in jail apparently from December 12 to 23, 1976 and from June 17 to 22, 1977.

on an approximate date four or five months ago, where such act is an unusual event. Of course, if the defendants contend that the undercover agent's testimony is cut out of whole cloth, time doesn't make much difference; and if the defense is entrapment, defendants must remember the incident or else how could they raise that defense.

The record indicates that sometime in January 1978 the court *sua sponte* reset Mitchell's trial to begin on April 14, 1978, apparently due to calendar congestion. Mitchell's counsel filed a second motion to dismiss on speedy trial and due process grounds on March 31, 1978, which was heard by Judge Lanham on April 10, 1978. No new testimony was offered. The court denied the motion by order dated April 11, 1978, for the same reasons as those contained in the earlier order.

Mitchell testified in his own behalf at the trial. He claimed to remember some details of the transaction very clearly and others not at all. All but one of the claimed difficulties in memory related to the transaction itself and not to dates before or after.

The sixth amendment to the United States Constitution and article I, section 14 of the Constitution of the State of Hawaii state that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial". *Barker v. Wingo*, 407 U.S. 514 (1972), established a balancing test to determine whether the right has been denied in a particular case; a test adopted by the Hawaii Supreme Court in *State v. Almeida*, 54 Haw. 432, 509 P.2d 549 (1973).

*Barker* established four pertinent factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. 407 U.S. at 530.

In this case, approximately 16 months passed between indictment and trial. There appear to be several reasons for the length of the delay. (1) Mitchell's pretrial motions to consolidate and for a continuance, filed during the week prior to the first scheduled trial date; (2) the trial court's delay in ruling on the motion to consolidate until about six months after it was filed; (3) the defendant's delay in filing his

speedy-trial motion to dismiss; and (4) apparent calendar congestion in the trial court causing the court to *sua sponte* reset the trial date from January to April of 1978. The first and third reasons were within Mitchell's control. The second reason was partially within Mitchell's control; if he wanted a speedy trial, he could have moved for an earlier decision on the motion to consolidate. The fourth reason was within the State's control. In analyzing various reasons for delay, the *Barker* Court indicated that:

> . . . different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531.

Mitchell first asserted his right to a speedy trial in his November 15, 1977 motion to dismiss the indictment, 11 months after the indictment had been returned, and six weeks after Judge Lanham had specifically cautioned counsel not to delay filing the motion, the latter causing the loss of the November 28 trial date. The record is barren of any affirmative request by Mitchell through his counsel for an earlier trial date. As noted above, Mitchell accepted the possibility of a trial date as late as August 1977 at the April 18, 1977 hearing before Judge Sodetani without expressing any reservations and deferred to the two other defendants when Judge Lanham asked his counsel on October 4, 1977 if Mitchell wanted his trial scheduled first. Indeed, in so deferring, Mitchell's counsel represented to the court that his client had "nothing really pressing".

The fourth and final factor in the balancing test is prejudice to the defendant.

> Prejudice, of course, should be assessed in light of the interests of defendants which the speedy trial right was

designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker, supra,* at 532 (footnote omitted).

It appears that Mitchell was incarcerated twice before trial: first, for eleven days following his December 1976 arrest; second, for five days in June 1977, when after discharge from the service, the court by order effective 4:00 p.m., June 17, 1977, revoked his earlier release on his own recognizance and set $500.00 bail. Bond was posted on June 22, 1977.

Mitchell did express anxiety and concern about the delay in resolving the charges against him, but he did not do so on the record until December 6, 1977, although both the anxiety and the opportunity to make it known apparently existed well before that date.

Finally, and decisively, we find little evidence that the post-indictment delay in this case created or enlarged the possibility that Mitchell's defense would be impaired. His claim that the lapse of time prevented him from calling three former co-workers, whose names and genders he could not recall, as character witnesses is unpersuasive, especially in view of the fact that he apparently made no effort to determine their identities or whereabouts. From the record, his claim of memory loss is mostly, and possibly exclusively, attributable to the pre-indictment period (August 10, 1976 - December 8, 1976). He testified, and his counsel represented to the trial court, that his memory of the events of August 1976 was very poor by December 1976. Relevant documents and discussion with his attorney "jogged" his memory of events on the date of the offense, but not of the events of surrounding days and weeks. The claimed memory loss as to surrounding dates was never shown to be important to Mitchell's defense, which essentially was that he had accepted the police informer's suggestion to "pretend" to sell heroin on the spur of the moment. Pre-indictment or pre-arrest delay is not a rele-

vant factor in a constitutional speedy trial analysis, since the right to a speedy trial is born when a person becomes an "accused"[3] through charge or arrest. *State v. Bryson*, 53 Haw. 652, 500 P.2d 1171 (1972); *United States v. Marion*, 404 U.S. 307 (1971). Thus, it appears that whatever memory loss happened occurred prior to the indictment and that the post-indictment delay did not enlarge any possible impairment of the defense. In our opinion, any presumption of prejudice arising from the length of the post-indictment delay is rebutted by the record.

We hold that the trial court did not err in denying either of Mitchell's motions to dismiss the indictment based on denial of his right to a speedy trial.

Mitchell also argues that the trial court's denial of his motion to dismiss the indictment due to the four-month delay between the date of the offense and the date of the indictment was erroneous. He contends that this delay caused memory loss and deprived him of due process of law. We disagree. A pre-indictment delay of four months claimed to have caused memory loss to the defendant does not, by itself, deprive the defendant of due process of law. *State v. Bryson, supra.* Here, the delay was caused by the continuing undercover status of the police detective who became the State's witness at the December 1976 grand jury hearing. We find the State's reason for delay in seeking the indictment justified. The State's interest in continuing the undercover police detective's effectiveness in pursuing purveyors of contraband narcotics is a legitimate State purpose. *Id.* The delay of four months in this case was not a violation of due process.

Affirmed.

*Christopher D. Ferrara (Robinson & Ferrara* of counsel) for defendant-appellant.

*Michael P. Akana,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[3] The sixth amendment to the United States Constitution and article I, section 14 of the Constitution of the State of Hawaii state that "[i]n all criminal prosecutions, the *accused* shall enjoy the right to a speedy . . . trial" (emphasis added). *See* cases cited in body of opinion immediately following this note.