STATE OF HAWAII, Plaintiff-Appellee, v. MARIA
DURRY, also known as Fenika Faamatau, Maria Naia
Faamatau, Malia Faamatau, Ruta Faamatau, Ruta Lasa,
Fenika McKernan, Fenika N. Durry, Maria Naia Durry,
Fenika Maria Durry, Maria Feneka, Maria Pavoc and
Fenika Lauvasa, Defendant-Appellant, and MIKA FAA-
MATAU, also known as Mike Faamatau, Lauvasa Lau-
vasa, Mika Lauvasa, Michael Lauvasa and Mika
Faamatao, and MAELEGA FERETI, also known as Mae-
lega Feleti, Maelega Faoasau Feleti, and Maaelega Feleti,
Defendants

NO. 8312

(CRIMINAL NO. 53869)

MAY 18, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant Maria Durry (Durry) appeals her conviction of the offenses of manslaughter, Hawaii Revised Statutes (HRS) § 707-702 (1976), and robbery in the first degree, HRS § 708-840 (1976).

Durry contends that she was deprived of her right to a speedy trial under the sixth amendment to the United States Constitution, article I, section 14 of the Hawaii State Constitution,[1] and Rule 48(b), Hawaii Rules of Penal Procedure (HRPP) (1977), and that the court erred in admitting hearsay testimony against her. We find no error and affirm.

On September 25, 1979 Durry was arrested for questioning on the charges of murder and robbery in the first degree and second degree,[2] and has been continuously in custody since that date. On February 10, 1980 the Oahu Grand Jury returned an indictment against her and co-defendants Mika Faamatau (Faamatau) and Maelega Fereti (Fereti) for murder and robbery in the first degree. Durry was not tried until May 11, 1981, nineteen months and seventeen days after her arrest. On May 13, 1981 the jury rendered its verdict of guilty of the lesser offense of manslaughter and of robbery in the first degree. Durry was sentenced to incarceration on June 22, 1981.

On April 20, 1981, just prior to her April 23, 1981 trial date, Durry filed a motion to dismiss for violation of Rule 48(b),[3] HRPP, and for lack of speedy trial. An order denying the motion was entered on May 4, 1981.

---

[1] The sixth amendment of the United States Constitution and article I, section 14 of the Hawaii State Constitution both provide in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

[2] Except as it affects Durry's speedy trial motion, the charge of robbery in the second degree was unrelated to the instant case and will be discussed below.

[3] Durry's motion is entitled "Motion To Dismiss Indictment As Being Untimely Under Rule 48(b) Of The Hawaii Rules of Penal Procedure And For Lack Of Speedy Trial." Durry makes no specific attack on the pre-indictment delay, but only the untimely trial.

SPEEDY TRIAL

Durry's right to a speedy trial accrued when she was arrested on September 25, 1979. *State v. Almeida,* 54 Haw. 443, 509 P.2d 549 (1973); *State v. Bryson,* 53 Haw. 652, 500 P.2d 1171 (1972); *State v. Mitchell,* 1 Haw. App. 121, 615 P.2d 109 (1980). The State concedes that the nineteen-month delay to the time of trial was "presumptively prejudicial," *State v. Valletta,* 66 Haw. ___, 662 P.2d 204 (1983), and that the other factors for determining whether there has been a violation of Durry's speedy trial rights must be examined. *State v. Nihipali,* 64 Haw. 65, 637 P.2d 407 (1981); *State v. O'Daniel,* 62 Haw. 518, 616 P.2d 1383 (1980); *State v. Almeida, supra.* Those other factors are (1) reasons for the delay, (2) the defendant's assertion of her rights, and (3) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Nihipali, supra; State v. O'Daniel, supra; State v. Almeida, supra.* None of those factors alone is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Instead, they are related factors and must be considered together with such other circumstances as may be relevant. In deciding the question, the courts must engage in a process of balancing those factors. *Barker v. Wingo, supra; State v. English,* 61 Haw. 12, 16 n.6, 594 P.2d 1069, 1072 n.6 (1979).

## 1. REASONS FOR THE DELAY

Durry argues that the primary reasons for the delay were that her attorney was unavailable for trial during part of the pre-trial period and the court erred in not giving her an earlier trial date. Durry does not contend that the State deliberately delayed the trial for the purpose of hindering her defense. Our review of the record indicates that there were many more reasons for the delay than those advanced by Durry.

We begin this discussion by first taking judicial notice of the additional charge of robbery in the second degree lodged against Durry when she was arrested in the instant case. *Sakamoto v. Chang,* 56 Haw. 447, 539 P.2d 1197 (1975); *In re Ellis,* 55 Haw. 458, 522 P.2d 460 (1974), *cert. denied,* 419 U.S. 1109,

95 S. Ct. 782, 42 L.Ed 805 (1975); *Wohlschlegel v. Uhlmann-Kihei, Inc.,* 4 Haw. App. 123, 662 P.2d 505 (1983); *Sapp v. Wong,* 3 Haw. App. 509, 654 P.2d 883 (1982). The offense took place on August 21, 1979, but Durry was not arrested until September 25, 1979 and she was unable to post bail for her release. The grand jury returned an indictment in that case (Cr. 53759) on January 9, 1980. Durry was tried and found guilty of the lesser offense of theft in the second degree on March 21, 1980.

Durry was arraigned on the instant charges on February 25, 1980. Faamatau was arraigned on March 3, 1980 and Fereti was arraigned on March 17, 1980. Trial for the three defendants was set for April 14, 1980. The public defender for Fereti, however, was not appointed until March 20. Moreover, on March 21, Faamatau filed a motion for severance which he subsequently withdrew on April 3. Consequently, the April trial date was continued to the week of June 2, 1980.

On April 15, 1980, new counsel was appointed for Fereti because his original public defender was also representing Faamatau. On May 28, Fereti filed a motion to suppress. Apparently because of this motion, the June trial date was again continued until the week of September 8, 1980. In the meantime, Durry's two previous lawyers withdrew and the court was required to appoint new counsel for Durry on March 5, 1980 and again on July 22, 1980, when present counsel was appointed.

Hearings on Durry's motion were continued at Durry's request from August 21, 1980, to August 28, 1980, to September 18, 1980, to September 29, 1980, and finally to October 6, 1980. On that last date, the motion to sever was granted. In the meantime, the trial was also continued and on October 6 new dates were set for the severed trials. Trial for Faamatau and Fereti was set for December 18-20, 1980 and for Durry on December 23-24, 1980.

The trials were not held in December and nothing appears in the record to indicate any continuance or any reason for it. On February 27, 1981, however, an order prepared by Durry's attorney was entered granting her motion to continue her trial date from February 26, 1981 to April 23, 1981, but the trial was not held until May 11, 1981. Again, the record does not show

the reason for the continuance to May, but we infer that it resulted from Durry's filing of her motion to dismiss on speedy trial grounds.

We have no difficulty in finding that until her motion for severance was granted on October 6, 1980 the delay was caused by the pre-trial motions, discovery, and proceedings relating to all defendants. Durry does not argue and cannot take the position that delays caused by her co-defendants' motions cannot be attributed to her. *Cf. State v. Nihipali, supra.* Moreover, the bulk of the pre-trial activity was on behalf or on account of Durry. Durry cannot complain about the delay from February 26 to April 23, 1981, since that continuance was on her motion. Nor can Durry complain about the delay from April 23 to May 11, 1981, as it resulted from her motion to dismiss. Additionally, a portion of the delay was occasioned by the trial of the second degree robbery charge against Durry. Therefore, the only period that concerns us is from October 6, 1980 to February 26, 1981.

The events after October 6, 1980 are confusing because of the incomplete record. However, we are able to recapitulate those events from the interchange between the court and counsel in the transcript of the April 22, 1981 hearing on Durry's motion to dismiss. In our reading of the transcript, it appears that the State was not at fault for any delay.

As noted above, the December trial dates were set so that Faamatau and Fereti would be tried ahead of Durry. It appears from the trial judge's remarks that this sequence was set because Durry did not want to go to trial before her co-defendants. Although defense counsel disputed this, we note that the trial judge's remarks are supported by the court's minutes of the pre-trial conference of October 6, 1980, when the December trial dates were set, and the minutes for February 17, 1981, when the April dates were set. Moreover, the order of continuance filed on February 27, 1981 and prepared by Durry's attorney sets the trial date to follow co-defendants' trial.

On the basis of oral argument before this court and the April 22, 1981 transcript, it appears that the reason for the continuance of the December 8, 1980 trial date was that counsel for one of the other defendants was not able to proceed in

December. The court, apparently without a motion or hearing, granted him a continuance and at the same time continued Durry's trial date to February 26, 1981 in accordance with the sequence already established. In February, however, Durry's attorney was involved in an ongoing trial and the matter was continued again to April 23, 1981.

Because there appear to be valid reasons for the period between arrest and trial, the State is not chargeable with unreasonably causing any delay.

## 2. DURRY'S ASSERTION OF HER SPEEDY TRIAL RIGHTS

Durry did not raise any objections on the record to any delay until April 20, 1981, virtually on the eve of trial. In *Barker v. Wingo, supra,* the United States Supreme Court said that whether and how a defendant asserts his right is entitled to strong evidentiary weight and is closely related to the other factors considered in a speedy trial deprivation claim. Failure to assert the right makes it difficult for a defendant to prove he was denied a speedy trial. In *Barker,* defendant's trial was delayed a number of times while the government tried to convict his co-defendant. Barker made only one objection after three and one-half years and did not assign any reason for that objection. The Supreme Court, therefore, found that Barker did not really want a speedy trial.

In *State v. Mata,* 1 Haw. App. 31, 613 P.2d 919 (1980), we found that defendant's assertion of his speedy trial right was ambiguous because the record indicated that six months after indictment, defense counsel requested a trial date two months in the future.

In the case at bar, we think that Durry's failure to assert her speedy trial right, when balanced with the other factors, militates against a finding that she has been denied that right. *See Barker v. Wingo, supra.* Although counsel contended on April 22, 1981 that he had wanted to go to trial on December 23, 1980 and did not want to go to trial after the co-defendants, no motion was made and no objection to any of the trial dates appears on the record. Also, as noted above, we infer that Durry indeed wished her trial to follow her co-defendants' and in fact deliberately held off any motion until their trial had

begun.

Durry's counsel at the April 1981 hearing argued that his client had objected to his February request to continue trial to April, and this seems to be acknowledged by the judge in his statement that he had offered her a change in counsel. Durry, however, chose to accept the continuance rather than change lawyers. As in *Mata, supra,* while we do not consider Durry's silence to be a waiver, we think under the circumstances of this case her silence causes a diminution of the weight we are required to give her eventual assertion of her right to a speedy trial.

### 3. PREJUDICE

We find prejudice completely lacking in this case. There is no question that Durry suffered because of her incarceration; however, that is not the kind of prejudice that must be shown. *Barker v. Wingo, supra,* 407 U.S. at 534, 92 S. Ct. at 2194, 33 L.Ed.2d at 119. *Cf. State v. Nihipali, supra.* Durry makes no claim that her defense was hampered or her memory dimmed by the delay. The only prejudice she claims arises from the fact that the delay allowed the government to use as an eye witness the co-defendant Fereti who was not otherwise available. In view of the weight of the evidence in the case against her, we find Durry was not prejudiced by the delay. Durry's defense was that it was Faamatau and Fereti who actually committed the offense and that she took the victim's wallet in order to persuade them to stop because she had the money. However, this contention was countered by not only Fereti's testimony but also by an independent witness who testified that she had told him of her complicity in the acts.

Balancing and weighing the foregoing factors in accordance with the principles established in *Barker v. Wingo, supra,* and *State v. Mata, supra,* we find that Durry has not been deprived of her speedy trial rights under the United States and Hawaii state constitutions.

## RULE 48

The pertinent provisions of Rule 48, HRPP (1977), are as follows:

(b) By Court. Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

(1) the date of arrest or of filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made;

\* \* \* \* \*

(c) Excluded Periods. The following periods shall be excluded in computing the time for trial commencement:

(1) periods of delay resulting from collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals and trials of other charges;

(2) periods of delay resulting from congestion of the trial docket when the congestion is attributable to exceptional circumstances;

(3) periods of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel;

\* \* \* \* \*

(7) a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance; and

(8) other periods of delay for good cause.

The purpose of Rule 48 is to ensure an accused a speedy trial, which is separate and distinct from his constitutional right to a speedy trial. *State v. Estencion,* 63 Haw. 264, 625 P.2d 1040 (1981). Excluding those periods provided for in the

rule, if the defendant has not been accorded a trial within six months of his having been arrested or charged, the trial court must dismiss the charge, with or without prejudice.[4] We find after all the exclusions are calculated that the State has not violated Rule 48(b).

Exclusion 1: Other proceedings and pre-trial motions.

As a result of Durry's second degree robbery charges we exclude the period of two months and twelve days, the period from indictment to the end of trial.

Durry made a total of nine pre-trial motions, all of which caused an elapse of three months and twenty-four days from filing to disposition.[5] In *State v. Soto,* 63 Haw. 317, 627 P.2d 279 (1981), our supreme court held that in computing the exclusion under Rule 48(c)(1), any delay resulting from any pretrial motions concerning the defendant shall be excluded from the day the motion is filed through the conclusion of the hearing on it or other prompt disposition thereof.[6] Since we find nothing in the record to indicate that either the court or the State delayed any disposition on Durry's motions, *cf. State v. Sujohn,* 64 Haw. 516, 644 P.2d 1326 (1982),[7] the entire period above is excluded from the operation of Rule 48(b).

---

[4] In *State v. Estencion, supra,* it was held that such dismissal was discretionary with the trial court. However, *Estencion* was decided on March 31, 1981, and the language of the rule was amended effective May 1981 to make the dismissal mandatory.

[5]

| Motion | Filed | Hearing | Lapsed Time |
|---|---|---|---|
| Supervised Release | 11/28/79 | 12/03/79 | 5 days |
| Release on Own Recognizance | 03/21/80 | 04/03/80 | 13 days |
| Suppress, In Limine, Severance | 08/08/80 | 10/06/80 | 2 mos. |
| Release on Own Recognizance | 11/07/80 | 12/08/80 | 1 mo. |
| Continuance (Orally joined) | 02/13/81 | 02/17/81 | 4 days |
| In Limine, Dismiss | 04/20/81 | 04/22/81 | 2 days |
| | | Total | 3 mos. 24 days |

[6] In its brief, the State computes excluded time from filing date to the order. Clearly that method is contrary to *Soto.*

[7] Durry attempted at the April 22, 1981 hearing to argue that the State really caused the delay in the disposition of her motions to suppress, in limine, and for severance filed on August 8, 1980. However, there is nothing in the record to support her representations and the point is not argued on appeal.

Exclusion 2: Docket congestion.

On October 6, 1980, at the hearing on Durry's motions to suppress, in limine, and severance, trial was set for co-defendants Faamatau and Fereti for December 18, 1980, and Durry's trial was set for December 23. Prior to that October date, the trial had been continued pending the hearing on the motions. The only indication in the record of the reason for setting the December trial dates is furnished by the transcript of the April 22, 1981 hearing on Durry's motions. At page 15 the court says:

> As far as this Court is concerned, the delay in this case was to a certain extent this Court's fault in extending the motion for separate trial in this matter that messed up the whole thing and at the same time the Court's calendar was filled up up to the last minute at the end of the year from way back . . .

As we noted earlier, the hearings on Durry's motions to suppress, in limine, and for severance were continued four times at her request. We interpret the court's statement above to mean that he should not have allowed Durry so many continuances in the light of the court's congested calendar. Consequently, it appears that the two-month and eighteen-day period from October 6, 1980 to December 23, 1980 is excludable from the period of delay. *Cf. State v. Herrera,* 63 Haw. 405, 629 P.2d 626 (1981); *State v. Mata, supra.*

Exclusion 3: Continuances granted at the request or with the consent of the defendant or her counsel.

The continuance of the trial date from February 26, 1981 to April 23, 1981 results in the exclusion of a period of one month and twenty-six days. Although the record does not show a written motion made by Durry, there was one filed by Fereti. Durry joined in that motion, as indicated by the order for continuance of her trial filed on February 27, 1981. As noted previously, defense counsel stated at the April 22 hearing that his client had objected to the continuance. Again we note that, having been given the option of changing lawyers or agreeing to the continuance, Durry cannot now complain because of the choice she made.

Exclusion 7: Joinder with other defendants.

Durry was charged along with two co-defendants. We

deem the time from co-defendant Faamatau's motion for severance filed on March 21, 1980 to the filing of Durry's motion for severance on August 8, 1980 as a reasonable period of delay resulting from such joinder. A period of four months and twenty days is excluded. *Cf. State v. Nihipali, supra.*
Exclusion 8:   Delay for good cause.

As we have already indicated based upon the transcript of the April 22, 1981 hearing, we find there was good cause for continuing Durry's trial from December 23, 1980 to February 26, 1981. We think it reasonable to infer from the record that Durry did indeed prefer that her trial follow rather than precede her co-defendants'. Therefore, a period of two months and five days is excluded.

The excludable periods outlined above total seventeen months and fifteen days. The two-month and two-day period remaining is clearly within the six months required by Rule 48(b), HRPP, and the rule has not been violated.

We are constrained to note that the record in this case points up a common failing of the prosecuting attorney in these cases; that is, the failure to clearly set forth in the record the grounds upon which the prosecutor believes the trial court should deny the speedy trial motion. In the instant case, the prosecutor filed nothing in response to the motion to dismiss and at the hearing was not able to offer any assistance to the court in its determination. The transcript clearly shows that the court and counsel were unclear as to the factors to be considered and even the approach to be employed in considering them. We think a defendant's speedy trial motion raises important issues which should not be addressed by prosecutors in as cursory a manner as was done here. The prosecutor should assist the court and defend against the motion by presenting to the court the facts regarding the delay. The discussion above indicates that the proper record could easily have been made below.

We also deem it necessary at this point to prevail upon the trial courts to establish a clear record of factual findings in future consideration of speedy trial motions. The findings should relate, where appropriate, to the due process requirements of the United States and Hawaii constitutions as well as Rule 48, HRPP. We think it would be commendable for the

trial courts to follow a format similar to that employed here, i.e., discuss the length of delay if not presumptively prejudicial, the reasons for the delay, the defendant's assertion of his or her speedy trial rights, and prejudice. Proceed then to discuss Rule 48 and the periods of any applicable exclusions under Rule 48(c). Such a record will not only manifestly ease the burden of the appellate court but should also make the trial court more comfortable with its decision.

We also urge upon the trial courts that during the entire movement of a criminal case through the system from arrest to disposition, a reason should be stated for every pre-trial delay, whether it be occasioned by court congestion, motions, continuances, collateral matters, or any reason. This will ease the burden of the trial court in deciding a speedy trial motion, since the record will quickly disclose its merits.

### HEARSAY TESTIMONY

Durry argues that the court erred in allowing her twelve-year-old son to testify as to what Faamatau told him on the evening of the murder, contending that the testimony was inadmissible hearsay. The State urges this court not to consider the point because Durry has not included it as a question on appeal in violation of Rule 3(b)(3), Rules of the Supreme Court. However, Durry has raised the issue in her points on appeal and in argument and we deem it necessary to consider it.

The testimony of Durry's son recounts a hearsay statement made by co-defendant Faamatau. It is clearly inadmissible unless it qualifies as an exception under Rule 803(b), Hawaii Rules of Evidence (HRE), chapter 626, Hawaii Revised Statutes (effective January 1, 1981), and we hold that the only exception that could cover the statement is 803(b)(24)[8] which states:

---

[8] Durry argues that admissibility is covered by Rule 803(a)(2)C (statement of co-conspirator) and because it is inadmissible under Rule 803(a)(2)C, it cannot be made admissible under Rule 803(b)(24). We agree that the statement is inadmissible under 803(a)(2)C; however, we do not agree that the exceptions are mutually exclusive.

(24) Other exceptions. A statement not specifically covered by any of the exceptions in this paragraph (b) but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The State argues that the testimony of Durry's son is trustworthy for a number of reasons. The argument is completely erroneous. The trustworthiness requirement of the rule relates to the hearsay statement that is being testified to, not the witness' testimony. Nonetheless, we find the statement was trustworthy, probative and admissible.

However, we are concerned by the fact that the record does not indicate that the trial court in fact made a determination that the evidence was more probative than other evidence which the State could procure through reasonable efforts, and that admission of the statement would best serve the purposes of the HRE and the interests of justice.

The commentary to Rule 803(b)(24) indicates that it is a residual exception designed to allow flexibility to the courts in the admission of hearsay evidence. However, "the exception is not designed to open the door widely for otherwise inadmissible evidence; and to safeguard against abuse the requirements of trustworthiness and a high degree of relevance circumscribe the exercise of judicial discretion." *Id.*

Rule 803(b)(24) is similar to Rule 803(24), Federal Rules of Evidence,[9] and we may look to treatises and cases dealing with

---

[9] *See* commentary to Rule 803(b)(24), Hawaii Rules of Evidence. The only difference between the two is that the federal rule requires an additional determination that the evidence is offered as evidence of a material fact.

the federal rule for assistance in determining the requirements of our rule.[10] *In re Ellis,* 53 Haw. 23, 487 P.2d 286 (1971), *reh'g denied,* 406 U.S. 950, 92 S. Ct. 2040, 32 L.Ed.2d 339 (1972).

In 11 Moore's Federal Practice § 803(24)[7] (2d ed. 1982), Professor Moore indicates that Rule 803(24) was intended to be used rarely and in exceptional circumstances. Professor Moore quotes from the report of the U.S. Senate Committee on the Judiciary that "[t]he committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions[.]"

Professor Moore also points out that although the rule contains no specific requirement that the court make any finding of the facts and circumstances indicating trustworthiness and necessity so as to justify admission, the committee report clearly indicates that Congress intended for such matters to be stated in the record.

Our research reveals two federal appellate cases dealing specifically with Rule 803(24), Federal Rules of Evidence. In *United States v. Guevara,* 598 F.2d 1094 (7th Cir. 1978), the court held that Rule 803(24) requires that the district court make findings with respect to the evidence sought to be admitted. In *Huff v. White Motor Corp.,* 609 F.2d 286 (7th Cir. 1979), the court did not so hold, but indicated that such a record would greatly aid the appellate court in reviewing a ruling made in the exercise of the court's discretion. The appellate court then examined the evidence and found that the court

---

[10] S. Stand. Comm. Rep. No. 22-80, 10th Hawaii Leg., 2d Session, *reprinted in* Senate Journal 1029, 1031 (1980). The report states:

[T]he effort by Professor Bowman, as instructed by Judge Doi's committee, to model the Hawaii Rules of Evidence upon the federal rules, has the distinct advantage of affording the commentary to the federal rules and the comprehensive treatises and material by Moore's Federal Practice, Weinstein's Evidence and West Publishing, as additional resource materials. A fairly substantial body of case law has already developed over the five years since the adoption of the federal rules in 1975.

should have admitted the evidence. We agree that the trial court should make its determinations a part of the record, so as to comport with the intent of the rule and provide a record for appellate review.

In the light of the foregoing considerations and the principles set forth in Rule 102, HRE,[11] we hold that when a court relies on Rule 803(b)(24), *sua sponte* or at the urging of counsel, for admission of hearsay evidence not coming within the other exceptions of Rule 803(b), the court should state on the record the basis for its determination of trustworthiness, probative value, and necessity. Upon doing so, it is not necessary to make an affirmative finding that the general purposes of the rules and the interests of justice will be served by admission of the evidence.

Notwithstanding the court's failure to place its finding on the record in this case, we think the evidence was properly admitted and no reversible error was committed. The requirement of trustworthiness was met, since the statement was by Faamatau and concerned his involvement in the offense. We think the statement was more probative than other evidence available and the purpose of the rules of evidence to ascertain the truth was served by its admission.

We also find that defendant was not prejudiced by the evidence. Faamatau's statement in fact did not directly implicate Durry. Moreover, as we stated earlier, Durry admitted her presence during the offense and the witness Leai Sinai Eli and co-defendant Fereti testified to her complicity. The evidence was harmless beyond a reasonable doubt.

Affirmed.

*William H. Brady* (*Brady & Brady* of counsel) for defendant-appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, City & County of Honolulu, for plaintiff-appellee.

---

[11] Rule 102, HRE, states that the rules should be construed to promote the growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.