Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000505
15-JUL-2019
08:04 AM

NO. CAAP-18-0000505

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
BENITO MARROQUIN, III aka BENNY MARROQUIN,
Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 16-1-117K)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

Defendant-Appellant Benito Marroquin III (**Marroquin**) appeals from the Judgment of Conviction and Sentence (**Judgment**) entered by the Circuit Court of the Third Circuit (**trial court**) on April 24, 2018. A jury found Marroquin guilty of second degree assault. He contends that the trial court erred by denying his Third Motion in Limine (**3rd MIL**) and his Amended Fourth Motion in Limine (**4th MIL**) without making specific findings or conclusions about whether the hearsay[1] statements at issue were trustworthy. For the reasons explained below, we affirm the Judgment.

I.

Marroquin and James Nichols (**Nichols**) were involved in a physical altercation on January 13, 2016, while both were

_____

[1] "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hawaii Rules of Evidence (**HRE**), Rule 801 (Supp. 2015).

working on the construction of a house. Marroquin was arrested and charged by complaint with assaulting Nichols in violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(a) and/or (b) (2014).[2] Marroquin claimed that Nichols was the aggressor and that he (Marroquin) acted in self-defense.

Trial was set for June 14, 2016. On June 3, 2016, Marroquin filed the pretrial motions that are the subjects of this appeal. The 3rd MIL sought a ruling that Hawaiʻi County Police Department officer Scott Aloy (**Officer Aloy**) would be allowed to testify that Raeven Aquino (**Aquino**) told Officer Aloy he saw Nichols put his hands around Marroquin's neck. Marroquin's 4th MIL sought rulings that (1) Hawaiʻi County Prosecuting Attorney's investigator Daniel Pang (**Investigator Pang**) would be allowed to testify that Tommy Hagadone (**Hagadone**) told Investigator Pang that Nichols was angry at Marroquin and "said he wasn't going to take that from a punk like [Marroquin] and that he was going to call him out on it[,]" (2) an email to that effect from Hagadone to Investigator Pang would be admitted into evidence,[3] and (3) witness Shelly Cunningham (**Cunningham**) (who was the project manager but did not see the altercation)

---

[2] HRS § 707-711 provided, in relevant part:

> (1) A person commits the offense of assault in the second degree if:
>
> (a) The person intentionally or knowingly causes substantial bodily injury to another; [or]
>
> (b) The person recklessly causes serious or substantial bodily injury to another[.]

[3] Hagadone's email to Investigator Pang stated:

> On January 13th of this year I showed up for work at the Douglas residence. I was talking with Benito [Marroquin] around 8 am and Jim [Nichols] came over to ask a question. Benito gave him a sarcastic answer and jim walked away angry. I went over to check and see if jim needed anything 10 minutes later and jim was still upset and said he wasn't going to take that from a punk like benito. He said he was going to call him out on it. I walked away and started working on what I was supposed to be doing that day and didn't think much of it until 20 minutes later when benito came over to where i was working and said jim grabbed him by the throat so he hit him. I didn't see the altercation.

(Lower case first names in original.)

would be allowed to testify that Hagadone told Cunningham that Nichols told Hagadone, "I'm going to get him[,]" referring to Marroquin.

The motions in limine were heard on June 9, 2016.[4] The trial court orally denied the 3rd MIL and entered a written order on June 24, 2016. The trial court also orally denied the 4th MIL, but continued the trial date to June 28, 2016, to allow Marroquin time to procure Hagadone's attendance at the trial.[5] A written order was entered on June 27, 2016. On June 16, 2016, Marroquin filed a second motion to continue the trial based upon Hagadone having obligations in North Carolina on June 28, 2016. The motion was heard on June 20, 2016. The State did not oppose the requested continuance. After conducting a colloquy to determine that Marroquin was validly waiving his right to a speedy trial, the trial court continued the trial to September 20, 2016.

Trial began on September 22, 2016.[6] Marroquin renewed his 3rd MIL and 4th MIL, representing that Hagadone had been subpoenaed for trial but did not show up and Aquino could not be found. The trial court denied both renewed motions. On September 27, 2016, the jury found Marroquin guilty as charged of reckless second degree assault. This appeal followed.

## II.

Before we address the trial court's rulings on the motions in limine, we must address a preliminary issue raised by Marroquin. Marroquin contends that the trial court committed reversible error by denying his motions in limine without making findings or conclusions on the record as required by State v. Hutch, 75 Haw. 307, 329, 861 P.2d 11, 22 (1993). Hutch involved a Hawai'i Rules of Penal Procedure (**HRPP**) Rule 48(b)(1)

---

[4] The Honorable Ronald Ibarra presided over the hearing.

[5] Hagadone was living in North Carolina at the time.

[6] The Honorable Ronald Ibarra presided over the trial.

(eff. 2000) motion to dismiss.[7] "An HRPP 48(b) motion to dismiss, by its very nature, involves factual issues." Id. at 330, 861 P.2d at 23. This case does not involve a Rule 48(b) motion to dismiss. Marroquin's motions in limine involved the admissibility of evidence. HRE Rule 104(a) (1993) provides: "Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court[.]" In a case involving the admissibility of hearsay, we have stated:

> [W]hen a court relies on Rule 803(b)(24), *sua sponte* or at the urging of counsel, for admission of hearsay evidence not coming within the other exceptions of Rule 803(b), the court should state on the record the basis for its determination of trustworthiness, probative value, and necessity.

State v. Durry, 4 Haw. App. 222, 235, 665 P.2d 165, 175 (1983), overruling on other grounds recognized by State v. Garcia, 96 Hawai'i 200, 213, 29 P.3d 919, 932 (2001) (underscoring added). The trial court's failure to state on the record the basis for its determination of admissibility, however, does not automatically require remand. In Durry we analyzed the trustworthiness of the proffered hearsay statement and held that it was properly admitted into evidence notwithstanding the trial court's failure to place its findings in the record. Id.

## III.

Marroquin's motions in limine required that the trial court rule on the admissibility of hearsay under HRE Rule 804(b)(5) and (8). HRE Rule 804 (1993 & Supp. 2015) provides, in relevant part:

---

[7] HRPP Rule 48 provides, in relevant part:

(b) By court. Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:

(1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

(b)   Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(5)   Statement of recent perception.  A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which the declarant was interested, and while the declarant's recollection was clear;

. . . .

(8)   Other exceptions.  A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

(Underscoring added.)

Hearsay evidence must meet one of the following two requirements in order to be admissible pursuant to HRE Rule 804(b) (declarant unavailable): (1) the statement must fall within a firmly rooted hearsay exception; or (2) the statement must show particularized guarantees of trustworthiness.  Whether a statement falls within a firmly rooted hearsay exception is a question of law reviewed de novo.  Whether a statement has particular guarantees of trustworthiness is reviewed for an abuse of discretion.

State v. Haili, 103 Hawaiʻi 89, 100, 79 P.3d 1263, 1274 (2003) (cleaned up).[8]

A.   3rd MIL

The subject of the 3rd MIL was Aquino's statement to Officer Aloy.  Officer Aloy's report stated:

Upon contacting AQUINO, I asked him if he saw what happened. He stated, "Yes," that he saw the two guys arguing at which point he stated that he saw the guy dressed in the tank top swing at the other guy.  He stated that the haole guy put his hands around the neck of the guy with the tank top and at that time, he stated that

---

[8]   "Cleaned up" is a parenthetical designed to tell readers that extraneous material (e.g., internal brackets, ellipses, quotation marks, citations, footnote reference numbers, and changes in capitalization) has been removed from a quotation for readability, and that none of it matters for understanding the quotation or evaluating its weight.  See Metzler, Jack, Cleaning Up Quotations, 18 J. App. Prac. & Process 143, 147, 154 (2017).

> he just saw the guy in the tank top keep punching the other guy in the face. He then stated that the haole guy was then stuck in the corner and the guy in the tank top kept punching him while he was on the ground at which point I asked him which party swung first. He stated that the guy in the tank top swung first and that he seemed to be the aggressor in this situation.

Officer Aloy's report also stated that Marroquin was wearing a tank top and that Aquino identified Marroquin "as the responsible party involved in this incident." Marroquin contends that Aquino's statement to Officer Aloy was admissible as a statement of recent perception under HRE Rule 804(b)(5) because Officer Aloy was dispatched to the scene at 9:24 a.m. and interviewed Aquino forty-one minutes later, at 10:05 a.m. The trial court ruled:

> THE COURT: Okay. So as to defendant's third motion in limine motion is denied.
>
> This is a statement given to a police officer -- well, not even a verbatim statement taken by the police officer. Like, uh, this scenario's more akin to State v. Jhun. So the motion is denied.

In State v. Jhun, 83 Hawai'i 472, 927 P.2d 1355 (1996), a police officer (**Officer Cravalho**) investigating an assault interviewed a witness (**Michael**). Officer Cravalho transcribed Michael's statement by hand onto three pages of HPD-252 forms. Michael signed an attestation that the statement was true and correct. At trial, the defendant attempted to elicit testimony from Officer Cravalho about what Michael said. The trial court sustained the State's objection to hearsay. The defendant appealed. The supreme court held:

> [T]he HPD-252 forms did not contain "factual findings" that Officer Cravalho based on his own investigation. Officer Cravalho did not record any of his own independent conclusions or opinions about his interview with Michael. Rather, the HPD-252 forms merely contained out-of-court statements that Michael had made to Officer Cravalho approximately one hour and forty-five minutes after the events that had culminated in Jhun's arrest. As a result, the HPD-252 forms lacked the typical characteristics of factual findings. Like the police reports at issue in Miller, the HPD-252 forms were merely a recitation of a third-party's out-of-court statements that fell under no other exception to the hearsay rule, and thus, the HPD-252 forms were not admissible under HRE Rule 803(b)(8)(C).

Id. at 481, 927 P.2d at 1364 (citing Miller v. Field, 35 F.3d 1088, 1091 (6th Cir. 1994)). Had Marroquin offered Officer

Aloy's testimony about Aquino's statement pursuant to the HRE Rule 803(b)(8)(C) (1993) exception for public records, the trial court would have correctly denied the motion under Jhun. But Marroquin's proffer was based upon HRE Rule 804(b)(5) and (8). We need not decide whether Officer Aloy's testimony about Aquino's statement should have been admitted based upon HRE Rule 804(b)(5) and (8) because even if the trial court had erroneously denied the 3rd MIL, the error would have been harmless.

"Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless." State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995) (citation omitted). Marroquin offered Aquino's statement that Nichols had his hands around Marroquin's neck to support his defense of self-defense. But Aquino also told Officer Aloy that Marroquin took the first swing at Nichols, that Marroquin kept punching Nichols even after Nichols was "stuck in the corner" and "on the ground[,]" and that Marroquin seemed to be the aggressor.

Aquino's observations were consistent with those of Job Bennett (**Bennett**), a carpenter who was also working on the house. At trial, Bennett testified that he heard Marroquin say "I'm going to punch you[.]" Bennett turned upon hearing the scuffle, and saw Marroquin turning Nichols around against the wall. As the two men turned, Nichols lost his footing and Marroquin put his left hand on Nichols's right shoulder and pushed Nichols down. As Nichols was falling down, he "gets a right hand to the right eye area from [Marroquin]." While Nichols was on the ground, Marroquin was "[h]olding him down with his ... left hand on [Nichols's] right shoulder." Bennett then testified that Marroquin

> punched [Nichols] three more times with the right hand to
> the right side of the face.
>
> Q. From your position did it look like [Marroquin]
> was punching Mr. Nichols in the same place over and over?
>
> A. Yes, approximately.
>
> Q. It was -- it was sort of focused in one area?

A.    Yes.

Q.    And you said that you saw three more punches while Mr. Nichols was on the ground?

A.    Yes.

Q.    Okay.   Again while Mr. Nichols is on the ground you said he's doing nothing so is he at least blocking?

A.    No.

Q.    Is he trying to get away?

A.    No.

Q.    Where are his hands?

A.    I think his left arm was trapped under his body, and the right arm was just -- just around -- around the chest area.

. . . .

[DEPUTY PROSECUTING ATTORNEY]: ... About how much time is this taking?

A.    Um, from beginning -- the beginning to?

Q.    From the falling to when it stopped.

A.    Oh, fifteen seconds about outside.

Q.    Okay.   So it's not a particularly long period of time?

A.    No.

Q.    Okay.   So, um, while Mr. Nichols is on the ground as you observed how responsive is he?

A.    Unresponsive.

Q.    What do you mean by "unresponsive"?

A.    I would say unconscious.

Bennett testified that Marroquin's demeanor while punching Nichols was aggressive.   After Marroquin stopped punching Nichols, Bennett moved towards Nichols to "make sure he was breathing and render what aid I could until someone got there to take better care of him."   Bennett testified that the right cheek area of Nichols's "face was pretty caved in."   It took Nichols "a full 40 seconds" to regain consciousness.

Officer Aloy testified that he did not see any injuries on Marroquin, any obvious signs of pain or discomfort, or any- thing about his movement that would indicate any impairment or injury.   Marroquin told Officer Aloy that his neck and back by

his shoulder blade area were hurt, but Officer Aloy did not see any injury, redness, abrasion, or bruising to those areas. Another police officer (**Officer Thompson**) testified that he had contact with Marroquin at the scene for 25 to 30 minutes. Marroquin did not complain of any pain or injury. Officer Thompson testified that he did not observe any injury on Marroquin and that Marroquin did not seek medical attention or treatment from the ambulance or medics on scene. In light of all the evidence, the trial court's exclusion of Aquino's statements to Officer Aloy was harmless beyond a reasonable doubt.

### B.   4th MIL

Marroquin argued in his 4th MIL that (1) Investigator Pang should be allowed to testify that Hagadone told Investigator Pang that Nichols "said [Nichols] wasn't going to take that from a punk like [Marroquin] and that [Nichols] was going to call [Marroquin] out on it[,]" (2) an email to that effect from Hagadone to Investigator Pang would be admitted into evidence, and (3) Cunningham should be allowed to testify that Hagadone told Cunningham that Nichols told Hagadone, "I'm going to get [Marroquin]."

The State argues that Marroquin failed to establish that Hagadone was unavailable. On the first day of trial, Marroquin's counsel reported that Hagadone had been subpoenaed but did not appear, and could not be located. This was sufficient for Marroquin as the defendant in a criminal case to establish unavailability for purposes of HRE Rule 804(b)(5).

Marroquin argued that the first level hearsay statements — Nichols's statements to Hagadone (that he wasn't going to take that from a punk like Marroquin and that he was going to call Marroquin out on it, and that he was "going to get" Marroquin) — are not hearsay because they establish the state of mind of Nichols, the complaining witness. HRE Rule 803(b)(3). The trial court reserved ruling on that issue because Marroquin was attempting to procure Hagadone's presence for trial, and Hagadone was being cooperative and had agreed to return to Hawai'i from North Carolina in September.

However, Hagadone's statement to Investigator Pang about what Nichols said, and Hagadone's statement to Cunningham about what Nichols said, are second-level hearsay. The trial court was concerned about the trustworthiness of Hagadone's statements because Hagadone was Marroquin's co-worker:

> THE COURT: And what does -- what is Hagadone's relationship to the defendant?
>
> [DEFENSE COUNSEL]: Hagadone was a co-worker.
>
> THE COURT: Of the defendant?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: So there's gonna be some question of, uh, reliability, trustworthiness?
>
> [DEFENSE COUNSEL]: There is and we're still trying to get Hagadone here. I -- I have been talking to him.
>
> THE COURT: Yeah, so -- so where's the reliability? He's a co-worker. He's gonna say --
>
> [DEFENSE COUNSEL]: He's a co-worker but he's a co-worker of the victim as well.
>
> THE COURT: Who was he friendlier to?
>
> [DEFENSE COUNSEL]: Well, uh, the defendant had been working there longer.

The trial court denied the 4th MIL with respect to the second-level hearsay (Investigator Pang's testimony about Hagadone's oral statement and email concerning Nichols's statements to Hagadone, and Cunningham's testimony about Hagadone's oral statement to Cunningham about Nichols's statement to Hagadone).

Marroquin's counsel represented that Hagadone had been subpoenaed for trial but did not appear and could not be located. A similar situation was at issue in State v. Swier, 66 Haw. 448, 666 P.2d 169 (1983). In that case the State sought to introduce a statement made by a witness to a police officer two days after an accident. When the witness left Hawai'i after the accident, he initially stated that he would return and testify, but later refused to do so. The trial court excluded the statement and the State appealed, arguing that it should have been admitted under the catch-all exception, then codified as HRE Rule 804(b)(6) and currently as Rule 804(b)(8). The supreme court held:

> The problem with the State's contention is that the trial court was not satisfied that [the witness's] statement had circumstantial guarantees of trustworthiness equivalent to those which have long been recognized in the case of the exceptions set forth in Rules 804(b)(1) through (5).
>
> In ruling on the motion, the trial court correctly pointed out that [the witness's] demonstrated equivocation with respect to returning to [Hawai'i] to testify cast some doubt on the trustworthiness of his statement. We cannot say that the trial court abused its discretion in rejecting the statement. We therefore affirm the trial court's ruling excluding [the witness's] statement without reaching the constitutional issue of the right to confrontation.

Id. at 450, 666 P.2d at 170. Similarly, in this case we cannot say that the trial court abused its discretion by not allowing Marroquin to elicit double hearsay testimony from Investigator Pang and from Shelly Cunningham about what Hagadone told them Nichols told Hagadone.

For the foregoing reasons, the Judgment of Conviction and Sentence entered by the Circuit Court of the Third Circuit on April 24, 2018, is affirmed.

DATED: Honolulu, Hawai'i, July 15, 2019.

On the briefs:

Victor M. Cox,
for Defendant-Appellant.

Charles E. Murray, III,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

11