912 P.2d 71

STATE of Hawai'i, Plaintiff–Appellee,

v.

Willie R. JACKSON, Defendant–Appellant.

No. 17367.

Supreme Court of Hawai'i.

Feb. 23, 1996.

Amended Concurring Opinion by
Judge Levinson filed Feb. 26, 1996.

Andre S. Wooten, on the briefs, Honolulu, for defendant-appellant Willie R. Jackson.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellee State of Hawai‘i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Following a jury trial, defendant-appellant Willie R. Jackson was convicted of one count of sexual assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–731(1)(a) (1993),[1] and one count of sexual assault in the fourth degree, in violation of HRS § 707–733(1)(a) (1993).[2] Jackson appeals from the judgment of the circuit court, contending that the court erred in: (1) denying his motion to dismiss for violation of Hawai'i Rules of Penal Procedure (HRPP) Rule 48(b);[3] (2) providing the jury with a definition of "strong compulsion" prior to commencement of trial; (3) restricting the scope of Jackson's recross-examination of a witness; (4) instructing the jury on included offenses; (5) denying Jackson's motion for new trial based upon the prejudicial effect of defense counsel's filing of a motion for judgment of acquittal at the close of the prosecution's case-in-chief; and (6) denying Jackson's motion for a new trial based upon post-verdict disclosures made by the jury foreperson. Jackson also claims that (7) insufficient evidence was presented at trial to support his convictions because the prosecution failed to establish the element of "strong compulsion."

We hold that Jackson received a fair trial, free from reversible error, and that sufficient evidence was presented by the prosecution to support his convictions. However, because we agree with Jackson that the circuit court erred in concluding that the commencement of his trial was within the time limits set forth in HRPP Rule 48, in light of our precedent, we have no choice but to vacate Jackson's convictions and remand for entry of an order dismissing the charges against him, with or without prejudice, in the circuit court's discretion.

We recognize that by vacating Jackson's convictions the purposes sought to be accomplished by HRPP Rule 48 will likely be subverted. For that reason, we take this opportunity to request that the Permanent Committee on Rules of Penal Procedure and Circuit Court Criminal Rules reassess HRPP Rule 48 and propose any amendments it deems necessary to prevent the reoccurrence of such an absurd result in the future.

## I. BACKGROUND

On the night of June 2, 1991, Jackson, Kaipo Annon, and the complaining witness (CW), all of whom worked together at a Waikiki hotel, decided to meet after work at Hot Rods Cafe (the Cafe), where Jackson's girlfriend, Monica, worked as a waitress. The three co-workers had some drinks and food, talked, and listened to music with another friend, Willie Meyers, until the Cafe closed at 2:00 a.m.

1. HRS § 707–731(1)(a) provides:

 (1) A person commits the offense of sexual assault in the second degree if:
 (a) The person knowingly subjects another person to an act of sexual penetration by compulsion[.]

2. HRS § 707–733(1)(a) provides:

 (1) A person commits the offense of sexual assault in the fourth degree if:
 (a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

3. HRPP Rule 48 (1985), entitled "Dismissal," provides in pertinent part:

 (b) By Court. Except in the case of traffic offenses, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months from:

 (1) the date of arrest or of filing the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

 ....

 (c) Excluded Periods. The following periods shall be excluded in computing the time for trial commencement:
 (1) periods of delay resulting from collateral or other proceedings concerning the defendant, including ... hearings on pretrial motions ...;

 ....

 (3) periods of delay resulting from a continuance granted at the request or with the consent of the defendant or [the defendant's] counsel;

 ....

 (5) periods of delay resulting from the absence or unavailability of the defendant; [and]

 ....

 (8) other periods of delay for good cause.

After the Cafe closed, the four walked to where they had parked. There was concern about Annon, who was driving a moped and lived in Hawai'i Kai, driving home at that late hour after having drunk "pretty heavy in the bar." Meyers offered to give Annon a ride home, but Annon did not want to leave his moped. Meyers then asked CW to follow Annon home as Annon drove his moped home. CW agreed, and asked Jackson to accompany her because she "didn't want to drive [to Annon's residence in Hawai'i Kai] alone." Jackson agreed, on the condition that they take his, rather than CW's, car.

Jackson and CW followed Annon as far as Kahala, where Jackson "just turned the car around and . . . went to Kahala Beach Park." After arriving at the park, the two got out of the car and talked.

Jackson testified that at that point, he decided that they should return and he took CW directly back to where her car was parked.

CW's testimony regarding the events that followed their arrival at Kahala Beach Park was drastically different than Jackson's account. According to CW's testimony, Jackson started kissing her, and she told him to stop and pulled away. They returned to the car, where Jackson reclined the seats, unzipped his pants, and "pulled out" his erect penis. CW testified that she felt "scared" and had not expected Jackson to do that.

Jackson informed CW that he wanted her to "jack him off." Still frightened, CW refused, and told him that she wanted to go back to her own car. Jackson ignored CW's request and instead "grabbed" her hand, "put it around his penis," and started "making [her] hand go up and down." Because CW "didn't want to move [her] hand up and down," Jackson covered her hand with his and forced her hand to "go up and down" on his penis. CW tried to pull her hand away, told Jackson that she did not want to do it,

and again pleaded that she be returned to her car. Jackson told her that he would not take her back until she made him "come," essentially giving CW an ultimatum: either perform manual sex or get out of the car and walk.

CW did not get out of the car because it was 2:30 or 3:00 in the morning, nobody was around, and it was dark. She was scared, "afraid to just walk," because "you hear stories about young girls and people getting murdered." CW did manage to free her hand, but Jackson "kept pulling it back." During this period, Jackson hid the car keys. At one point, CW succeeded in pulling her seat up, but Jackson reclined it back down and "jumped" over to her side. CW was "crying" and "making a lot of noise, hoping somebody would hear." She repeatedly told Jackson that she "wanted to go back to [her] car, to stop," but he ignored her pleas. Instead, Jackson got on top of CW and restrained her as she struggled. He then "pulled his pants half way down," forced CW's skirt up, and "inserted his penis in" her vagina.

CW testified that she remained "scared" throughout this encounter, and that she was crying and repeatedly telling Jackson to stop. However, Jackson ignored her pleas and "kept doing it." Eventually, Jackson "pulled his penis out." CW again told him to take her back to her car. Jackson complied, and apologized to CW on the ride back. He also cautioned CW not to tell their friends at work or his girlfriend about the incident. CW subsequently reported the incident, and Jackson was arrested.

On April 28, 1992, an O'ahu grand jury returned an indictment charging Jackson with sexual assault in the first degree in violation of HRS § 707–730(1)(a) (1993)[4] (Count I) and sexual assault in the third degree in violation of HRS § 707–732(1)(e) (1993)[5] (Count II). Jackson filed a motion

4. HRS § 707–730(1)(a) provides:
 (1) A person commits the offense of sexual assault in the first degree if:
 (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

5. HRS § 707–732(1)(e) provides:

 (1) A person commits the offense of sexual assault in the third degree if:
 . . . .
 (e) The person knowingly, by strong compulsion, has sexual contact with another or causes another person to have sexual contact with the actor[.]

for supervised release and/or bail reduction on August 4, 1992. He subsequently withdrew the motion on August 31, 1992.

On December 1, 1992, Jackson filed a motion to dismiss the charges against him, claiming that HRPP Rule 48(b) had been violated inasmuch as his trial had not commenced within one hundred eighty days of his arrest. Jackson argued that two hundred seventeen non-excludable days had elapsed between April 28, 1992, the date of the filing of charges against him, and December 1, 1992, the date on which he filed his HRPP Rule 48(b) motion. The circuit court denied the motion, concluding, inter alia, that the twenty-eight days that had elapsed while Jackson's motion for supervised release and/or bail reduction was pending, as well as the fifteen days between the first pretrial status conference (rescheduled due to defense counsel's failure to appear) and the second, were excludable. The circuit court held that, after excluding these periods, the allowable period had not been exceeded.

Trial commenced on December 2, 1992. Before the trial began, and outside of the jury's presence, the circuit court informed both parties of its intention to provide the jury with a few preliminary instructions, including the definition of "strong compulsion." The court explained that it wanted to give the jurors something to focus on during the course of the proceedings, and asked whether counsel had any objections. Although defense counsel James Miura had no objection to the substance of the definition, he did note an objection on procedural grounds.

Prior to recross-examination of CW, the court warned Miura, "Limit yourself to recross ... we're not going to do cross all over again." During the recross, as Miura began to question CW about statements she had made to a private detective and to the police regarding the alleged sexual assaults, the following colloquy ensued:

THE COURT: How deeply are we getting into this since this is recross?

. . . .

THE COURT: I don't recall that the [prosecution] raised that issue in its redirect.

MIURA: Well, I—this is also another prior statement, your Honor.

THE COURT: Yeah, but that's what you should have done in your cross, this is redirect, this is the fourth shot, you don't get to start doing new things in the fourth shot. You can only attack what the [prosecution] raised in its redirect and I don't recall that [it] did raise that on redirect.

I don't want to get into a third statement unless it directly deals with something raised by the [prosecution] in its redirect, not [its] direct.

MIURA: Well, your Honor, if—it can get redundant, I can see this point, your Honor, I won't get into that point.

Miura then terminated his recross-examination of CW.

Once the prosecution rested, Jackson made a motion for mistrial and a motion for judgment of acquittal, each of which the court heard and denied that day. Both motions were heard outside the presence of the jury.

After the defense presented its case, and the parties settled jury instructions, Jackson renewed his motion for judgment of acquittal and again, outside the presence of the jury, the court denied his motion. The jury thereafter deliberated for a day and a half before returning its verdict: as to Count I, Jackson was found guilty of the included offense of sexual assault in the second degree, and, as to Count II, he was found guilty of the included offense of sexual assault in the fourth degree. The court polled the jury, and all members indicated agreement with the verdict.

On December 21, 1992, Jackson filed a motion for a new trial, based on post-verdict revelations made by Patricia Pennywell, the jury foreperson. The motion alleged that because the "jury took into consideration the fact that Defendant was of African–American descent in coming to a guilty verdict," Jackson "did not receive a fair and impartial trial on this matter." According to Pennywell, two of the jurors made some comments that, arguably, revealed racial prejudice. One juror—an elderly Japanese female—expressed surprise that Jackson, whom she referred to as "colored," had such a "pretty" and "non-

Black" wife. However, Pennywell added, "I really believed that was something that was probably said after the verdict was agreed to. And as such ... [i]t didn't have any bearing on the deliberations itself."

A second juror remarked, in the context of discussing the effects of alcohol, "That's the way they are." Pennywell inferred that "they" referred to men of African–American descent. Pennywell then "called the juror" on her comment by repeating it. The juror immediately denied that she had meant any racial overtone. A few other jurors "grumbled" or "raised eyebrows perhaps."

Pennywell testified that aside from these comments, no other references to race were made, and that it "wasn't possible to be racial with respect to the matter before the group." In addition, Pennywell testified that she reminded the jurors "[t]hat it was important not to consider race as an issue in the deliberations."

Pennywell also disclosed that on the morning of the day that the jury reached its verdict, she began to have memories of a sexual assault, of which she had not previously been consciously aware, that had been perpetrated on her by her stepfather when she was thirteen-years-old. Pennywell did not discuss her memories or feelings with the other jurors during deliberations. Nor did she vouch for the credibility of the complaining witness. When asked whether she was feeling any mental or emotional discomfort during jury deliberations because of the thoughts and memories of her own assault, Pennywell responded, "I was beginning to but they had not become clear until the morning we turned in a verdict." Pennywell testified:

> I figured I would be able to keep what happened to me separate from the issue before the court, and I was fully aware

that it wasn't necessary for all of us to come to an agreement in a jury. That it was possible for there to be no agreement, and I found myself caving in simply because I couldn't tolerate being in the room with the ... situation and discussion.

At the conclusion of Pennywell's testimony, the circuit court heard and considered the arguments of counsel on both sides. The court thereafter denied Jackson's motion for new trial, stating in part:

> [u]nder the circumstances and given the evidence that I have heard ... I ... found the evidence of guilt compelling and overwhelming; and I did not disagree with the verdict.... Nothing else in the day-and-a-half deliberation ... indicates to me that ethnicity or race had anything to do with it.... As to [Pennywell's] experience with her stepfather ... I am satisfied that [she] knew what she was doing when she voted to convict.... I didn't see anything improper in the deliberations.

On January 21, 1993, Miura made a motion to withdraw as counsel and have substitute counsel appointed.[6] The next day, at a preliminary hearing on the motion for new trial based on Pennywell's disclosures, Jackson orally notified the court of his wish to replace Miura with private counsel on the ground that Miura had filed the motion for judgment of acquittal without Jackson's permission.[7] Jackson subsequently filed a pro se motion for new trial based on Miura's filing of the motion for judgment of acquittal against Jackson's wishes.

On July 15, 1993, the circuit court denied Jackson's motion for new trial based on Miura's filing of the motion for judgment of acquittal. Final judgment and sentence were entered that day. Jackson thereafter timely appealed.

---

6. Several months later, on May 24, 1993, Miura again filed a motion to withdraw as counsel and have substitute counsel appointed. The court finally granted the motion to withdraw as counsel and appointed André S. Wooten as defense counsel on June 14, 1993.

7. Jackson claimed that he was prejudiced when the motion for judgment of acquittal was presented to the jury. The circuit court pointed out that juries do not receive or read motions. Jack-

son persisted in his objection to the filing of the motion without his permission, claiming that he "felt that if [he] was to take the stand and address the jury on [his] own," rather than have defense counsel make a motion for judgment of acquittal, he could have won his case. The court then noted that Jackson had, in fact, taken the stand. Jackson responded, "Right, but I didn't want Mr. Miura to file the motion for a judgment of acquittal without my—."

**46**

## II. *DISCUSSION*

### A. *Sufficiency of the Evidence*

Jackson alleges that there was "insufficient evidence to establish beyond a reasonable doubt that the crime of Sexual Assault by illegal *strong compulsion* or threatening had actually been committed, as required by Hawai'i law, even when the evidence is viewed in the light most favorable to the [prosecution]." (Emphasis added.)

■ Whether there was insufficient evidence to establish "strong compulsion" in the instant case is irrelevant, because "strong compulsion" is not an element of either offense for which Jackson was convicted. Although Jackson was charged with sexual assault in the first degree under HRS § 707–730(1)(a) and sexual assault in the third degree under HRS § 707–732(1)(e), both of which require proof that the defendant used "strong compulsion," *see supra* notes 4 and 5, he was ultimately convicted of the included offenses of sexual assault in the second degree under HRS § 707–731(1)(a) and sexual assault in the fourth degree under HRS § 707–733(1)(a), respectively, neither of which require proof that the defendant used "strong compulsion," but only require proof that the sexual penetration/contact was accomplished by "compulsion." *See supra* notes 1 and 2. "Compulsion" may be proved by evidence of an "absence of consent," HRS § 707–700 (1993), and the jury in the instant case was so instructed.

The question thus becomes whether there was sufficient evidence to establish the element of "compulsion."[8]

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be

said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)).

■ In the instant case, the record contains substantial evidence that, from the outset, CW rebuffed Jackson's sexual advances. According to CW's testimony, she repeatedly told him to stop, attempted to pull away, and told Jackson that she did not want to touch him. This evidence is sufficient to establish absence of consent and, accordingly, is sufficient to establish the element of "compulsion."

Thus, based on our review of the record, considering the facts in the strongest light for the prosecution, we hold that substantial evidence was presented to support Jackson's convictions of sexual assault in the second degree and sexual assault in the fourth degree. Therefore, Jackson's argument in this regard is without merit.

### B. *Pre-trial instruction on "strong compulsion"*

■ In a related point of error, Jackson contends that the circuit court erred in giving a preliminary instruction defining "strong compulsion." Jackson, however, fails to present any argument whatsoever to support this claim. Because no support for this claim appears in the "Argument" section of Jackson's opening brief, it is our prerogative to disregard it without reaching the issue pre-

---

8. Jackson does not argue that there was insufficient evidence to support any of the other elements of the offenses for which he was convicted.

sented. *State v. Lopez,* 78 Hawai'i 433, 452, 896 P.2d 889, 908 (1995) (citing *Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 29 n. 19, 889 P.2d 705, 713 n. 19 (1995)); *see also State v. Reed,* 77 Hawai'i 72, 86, 881 P.2d 1218, 1232 (1994); *cf. Berkness v. Hawaiian Electric Co.,* 51 Haw. 437, 438, 462 P.2d 196, 197 (1969).

■ Furthermore, because the jury did not convict Jackson of any offense involving "strong compulsion," *see supra* section II.A., even assuming, *arguendo,* that the circuit court erred in giving the pre-trial instruction regarding the definition of "strong compulsion," any such error was harmless beyond a reasonable doubt.

### C. Restriction of Recross–Examination

■ Jackson next maintains that the circuit court improperly restricted the scope of his recross-examination of CW. The scope and extent of cross and recross-examination of a witness is within the sound discretion of the trial judge. *See, e.g., State v. Alfonso,* 65 Haw. 95, 648 P.2d 696, 700 (1982); *see also State v. Emmsley,* 3 Haw.App. 459, 467, 652 P.2d 1148, 1154 (1982). Under this standard, we will not disturb the trial court's exercise of its discretion unless it is clearly abused. An "abuse of discretion occurs if the trial court has 'clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.'" *State v. Adams,* 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992)).

■ Hawai'i Rules of Evidence (HRE) 611 provides, in pertinent part:

(a) Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witness and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect the witness from harassment or undue embarrassment.

(b) Scope of cross-examination. Cross-examination should be limited to the subject of the direct examination and matters affecting the credibility of the witness.

Pursuant to this rule: (1) "[r]edirect is properly limited to the development, correction and refutation of matters brought out for the first time on cross"; and (2) "[r]ecross should similarly be limited to items newly broached on redirect. Repetitive examinations are properly curtailed under the court's general rule 611(a) control." A. Bowman, *Hawai'i Rules of Evidence Manual* 250 (1990).

■ Jackson alleges that "[t]he trial court improperly denied [him] his right to confront and impeach his accuser" by restricting the scope of his recross-examination of CW "concerning the incident the [prosecution] questioned her about on re-direct." This argument is contradicted by the record before us, insofar as (1) the circuit court did not preclude recross-examination of issues that had been raised on re-direct at all, but rather sought to limit the scope of recross so as to exclude issues *not* raised on re-direct, and (2) defense counsel voluntarily ceased pursuing a line of questioning that was concededly "redundant."

Even if the circuit court had expressly restricted the scope of defense counsel's re-cross-examination in the manner described, such action would have fallen within the ambit of its discretion. However, a closer examination of the trial transcript reveals that this is not what occurred. After cautioning defense counsel to avoid questioning "unless it directly deals with something raised by the [prosecution] in its redirect, not [its] direct," the circuit court allowed recross-examination to continue. At that point, defense counsel noted that his intended line of questioning would be "redundant," and thereby ended his recross-examination of CW voluntarily.

Inasmuch as the circuit court did not abuse its discretion by cautioning defense counsel to keep the scope of his recross-examination within the proper bounds, and given that defense counsel voluntarily terminated the recross-examination because the intended line of questioning became redundant, Jackson's rights were not violated. *Cf. Emmsley,*

*supra* (repetitive recross properly disallowed).

## D. *Jury Deliberations*

█ Jackson's final contention with respect to alleged errors occurring at trial[9] is that he was deprived of a fair trial by twelve fair and impartial jurors and that the circuit court erred in denying his motion for new trial on that basis. The granting or denial of a motion for new trial rests within the discretion of the trial court and will therefore not be disturbed absent a clear abuse of discretion. *State v. Furutani*, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994). "The same principle is applied in the context of a motion for new trial premised on juror misconduct." *Id.* at 179, 873 P.2d at 58.

Jackson's argument in this regard is based on jury foreperson Pennywell's post-verdict testimony that: (1) two jurors had expressed racist opinions; and (2) Pennywell had experienced an incident of sexual assault in her childhood that she did not recollect until the day on which the jury reached its verdict.

█ In *Furutani, supra,* we addressed the general principles and the conceptual framework governing claimed denials of the right to a fair trial by an impartial jury. We explained that "[t]he defendant bears the initial burden of making a *prima facie* showing of a deprivation that could substantially prejudice [his or her] right to a fair trial by an impartial jury." 76 Hawai'i at 181, 873 P.2d at 60. When a defendant makes such a claim,

> the initial step for the trial court to take is to determine whether the nature of the alleged deprivation rises to the level of being substantially prejudicial. If it does not rise to such a level, the trial court is under no duty to interrogate the jury.

And whether it does rise to the level of substantial prejudice is ordinarily a question committed to the trial court's discretion.

*Id.* at 180, 873 P.2d at 59. When the alleged deprivation is based on statements made during deliberations, in order for the deprivation to rise to the level of being substantially prejudicial, a showing must be made "that improper juror comments during deliberations have been used as a circumstance against" the defendant. *Id.* at 185, 873 P.2d at 64. If such a *prima facie* showing is made by the defendant,

> there is a presumption of prejudice and the verdict will be set aside unless it is clearly shown that the juror's comments could not have affected the verdict. And consistent with our case law, the burden is on the prosecution to make such a clear showing beyond a reasonable doubt.

*Id.* at 185–86, 873 P.2d at 64–65.

### 1. *Alleged racial bias amongst the jurors*

We first consider Jackson's allegation regarding "the expression and acting out of racial prejudice in the jury deliberations." Upon review of the record, we are convinced that even assuming, *arguendo*, that both jurors' comments reflected a tendency towards racial bias, the circuit court did not abuse its discretion in denying Jackson's motion for new trial on that basis.

█ First of all, the comments regarding the race and appearance of Jackson's wife were made after agreement on the verdict had been reached.[10] These comments therefore could not have been "comments during deliberations [that were] used as a circumstance against" Jackson. *See Furutani*, 76 Hawai'i at 185, 873 P.2d at 64. Consequently, they could not have risen to the level

---

9. Jackson's points of error regarding (1) the circuit court's instructing the jury on included offenses and (2) defense counsel's submission of the motion for judgment of acquittal are entirely without merit and do not warrant further discussion.

10. "The trial judge, at a hearing on a motion for new trial, acts as the trier of fact. In this jurisdiction, a trial court's [findings of fact] are subject to the clearly erroneous standard of review."

*Furutani,* 76 Hawai'i at 179, 873 P.2d at 58. Although the circuit court did not enter written findings of fact, the court expressed its findings in making its oral ruling at the conclusion of the hearing on Jackson's motion for new trial. One such finding was that the juror's comments regarding her surprise at the racial difference between Jackson and his wife were made after the jury had reached agreement on the verdict. This finding was not clearly erroneous.

of being substantially prejudicial and could not have affected the verdict.

We are more troubled by the statement, "That's the way they are," which Pennywell understood to be a reference to African–American men. Nonetheless, the trial court could have reasonably concluded that the statement did not influence the other jurors because: (1) Pennywell challenged the juror as soon as the comment was made; (2) the juror immediately denied any racial meaning behind the statement; (3) other jurors reacted to the comment negatively; (4) Pennywell expressly cautioned the jury not to consider race as an issue in the deliberations; (5) no other statements reflecting racial bias were made during the course of the deliberations; and (6) the circuit court "found the evidence of guilt compelling and overwhelming."

Based on the foregoing, we hold that the circuit court could have reasonably concluded that the jurors' comments "could not have affected the verdict." *See Furutani,* 76 Hawai'i at 185, 873 P.2d at 64. Accordingly, we hold that the circuit court did not abuse its discretion in denying Jackson's motion for new trial on these grounds.

2. *Pennywell's recollection during deliberations of a childhood experience of sexual assault*

We next examine the effect of Pennywell's recollection of a childhood experience of sexual assault on Jackson's right to a fair trial by an impartial jury. This type of situation often arises in the context of, and is framed as a question involving, juror nondisclosure of relevant information during voir dire.

> Under some circumstance a juror's nondisclosure of information during jury selection may be grounds for a new trial. Where, for example, a juror deliberately misrepresents important biographical information relevant to a challenge for cause or a peremptory challenge or knowingly conceals a bias or hostility towards the defendant, a new trial might well be necessary. In such instances, the juror's deliberate misrepresentation or knowing concealment is itself evidence that the juror

was likely incapable of rendering a fair and impartial verdict in the matter.

*Furutani,* 76 Hawai'i at 182, 873 P.2d at 61 (quoting *People v. Dunoyair,* 660 P.2d 890, 895 (Colo.1983)). The instant case, however, cannot be properly characterized as one involving knowing concealment during voir dire. First, because the jury selection process was not transcribed, we have no record of the questions asked during voir dire. We know only, according to Pennywell's testimony, that she was asked "about her experience" generally and "about being fair." Second, it is uncontroverted that Pennywell was not consciously aware of her childhood experience at the time of voir dire and, therefore, would have been unable to disclose that information even if asked.

In determining whether Pennywell's recollection itself, as opposed to the failure to disclose it during voir dire, deprived Jackson of a fair trial by an impartial jury, we return to the conceptual framework discussed above. In this context, in order to make a *prima facie* showing of a deprivation, Jackson would have to present evidence that Pennywell "consciously relied on her personal childhood experience as a sex[ual] assault victim and, based on that experience, communicated her assessment of the credibility of [CW's] testimony to her fellow jurors." *Id.* at 182 n. 13, 873 P.2d at 61 n. 13; *see also State v. Larue,* 68 Haw. 575, 577–78, 722 P.2d 1039, 1041–42 (1986).

Furthermore, as to the reasons that Pennywell ultimately "caved in" and voted for conviction—be it exhaustion, pressure from the other jurors, or stress due to the nature of her recollection—we may not make specific inquiries. HRE 606(b) provides:

> (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may the juror's affidavit or evidence of any statement by the juror

indicating an effect of this kind be received.

*See also Larue,* 68 Haw. at 578, 722 P.2d at 1042. Although "HRE 606(b) does not prohibit 'inquiry into' the deliberative processes of juries," *State v. Holbron,* 80 Hawai'i 27, 46, 904 P.2d 912, 931 (1995), "under [HRE] 606(b), we cannot consider jurors' testimony as to the effect of the [outside influence] upon them[; w]e can only consider whether such [outside influence was present], and whether, given [the outside influence], we can say that the defendant had a trial before an impartial jury." *Furutani,* 76 Hawai'i at 185, 873 P.2d at 64 (citation, footnote, original brackets and ellipses points omitted).

■ The record supports the circuit court's findings that Pennywell did not communicate her recollection to the other jurors, nor did she rely upon it to vouch for CW's credibility. In fact, Pennywell testified that she did not comment on CW's credibility at all. Moreover, Pennywell's experience did not manifest itself in a bias against Jackson during the course of the deliberations; indeed, she was the only juror "holding out for not guilty" throughout the deliberations. For these reasons, we hold that the circuit court did not abuse its discretion in refusing to grant a new trial based on Pennywell's recollection during deliberations of her childhood experience of sexual assault.

### E. *HRPP Rule 48*

In Jackson's remaining point of error he does not challenge the fairness of his trial but argues that the circuit court erroneously denied his pre-trial motion to dismiss for violation of HRPP Rule 48(b).

HRPP Rule 48(b) mandates the dismissal of criminal charges if a trial on those charges does not commence within six months, construed as one hundred eighty days, from the time of the arrest or of filing of charges, whichever is sooner. *State v. Hoey,* 77 Hawai'i 17, 28, 881 P.2d 504, 515 (1994). Pursuant to HRPP Rule 48(c), however, certain periods must be excluded from the computation of the six month period.

In the instant case, it is undisputed that two hundred seventeen days elapsed between the date of Jackson's arrest and the commencement of his trial, exceeding by thirty-seven the one hundred eighty days permissible under HRPP Rule 48(b). The circuit court, however, concluded that (1) the twenty-eight day period from August 3, 1992, through August 31, 1992, during which Jackson's motion for supervised release and/or bail reduction was pending and (2) the fifteen day period from October 9, 1992, through October 23, 1992, attributable to a rescheduled pretrial status conference, were excludable time periods. Consequently, the circuit court concluded that the time limits set forth in HRPP Rule 48 had not been violated.

1. *The circuit court erred in excluding the twenty-eight day period from the date on which Jackson filed his motion for supervised release through the date on which the motion was heard.*

At the time of the hearing on Jackson's HRPP Rule 48 motion to dismiss, the law in this jurisdiction was that periods resulting from the filing of a defendant's motion for supervised release and/or bail reduction are excluded from calculations for HRPP Rule 48 purposes. *See State v. Durry,* 4 Haw.App. 222, 665 P.2d 165 (1983). The circuit court recognized the *Durry* holding in concluding that the twenty-eight day period attributable to Jackson's motion for supervised release and/or bail reduction was excludable under HRPP Rule 48(c). *Durry,* 4 Haw.App. at 230 n. 5, 665 P.2d at 172 n. 5.

However, subsequent to the circuit court's ruling on Jackson's Rule 48 motion, we held that

a motion for supervised release and/or bail reduction does not address substantive issues that affect the timing of trial. The motion may be filed or heard at any time— before, during, or even after trial. Thus, excluding time periods attributable to the pendency of such motions for purposes of the HRPP 48 computation would not advance the underlying policies of prompt processing of cases and maximizing the efficiency of the criminal justice system....

Because motions for supervised release and/or bail reduction in no way delay the

commencement of criminal trials, we hold that time periods attributable to such motions are not excludable pursuant to HRPP 48(c).

*Hoey,* 77 Hawai'i at 30, 881 P.2d at 517 (citations omitted).

Were *Hoey* given retroactive application, the time period attributable to Jackson's motion for supervised release and/or bail reduction would not be excludable pursuant to HRPP Rule 48(c). The issue, therefore, becomes whether *Hoey* is to be given retroactive application. *See State v. Ikezawa,* 75 Haw. 210, 219, 857 P.2d 593, 597 (1993) (holding that a decision overruling clear precedent under which six-month speedy trial period was not tolled between dismissal of original charge and filing of different charge even when charges were based on same episode would not be applied retroactively, particularly in light of defendant's substantial reliance on overruled precedent).

■■■ "Although judicial decisions are assumed to apply retroactively, such application is not automatic." *Id.* "Implicit in the factors to be considered in determining whether a judicial decision will be applied retroactively is the concept of fairness." *State v. Kekona,* 77 Hawai'i 403, 410 n. 3, 886 P.2d 740, 748 n. 3 (1994) (Levinson, J., concurring and dissenting) (quoting *Ikezawa,* 75 Haw. at 220–21, 857 P.2d at 598) (brackets omitted). Because we applied the *Hoey* rule to vacate Hoey's conviction, rather than limiting its application to future appeals, "persuasive federal authority would suggest that we would be obligated to apply the same rule to all other criminal proceedings currently pending in the court system." *Id.* (citing *Powell v. Nevada,* 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994)). This is true for two reasons:

First, the nature of judicial review precludes us from simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new [rules], and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule. Second, selective application of new rules violates the principle of treating similarly situated defendants the same.

*Id.* (quoting *Powell,* 511 U.S. at ——, 114 S.Ct. at 1283) (citations, quotation marks, ellipsis points, brackets, and emphases omitted).

■■■ Jackson filed his notice of appeal on August 12, 1993. We announced our decision in *Hoey* on September 22, 1994. Thus, Jackson's appeal was pending when the new rule—*i.e.,* that time periods attributable to motions for supervised release are not excludable for HRPP Rule 48(c) purposes—was announced. Because the present appeal could just as easily have been the case "fish[ed] from the stream of appellate review" to serve as the vehicle for the pronouncement of this rule, and because we chose to apply the new rule to Hoey himself, we are obligated to apply the rule retroactively to all similarly situated defendants whose appeals were pending at the time it was announced. *Cf. Tachibana v. State,* 79 Hawai'i 226, 238 n. 10, 900 P.2d 1293, 1305 n. 10 (1995) (noting that because new rule would be applied to neither Tachibana's case nor "any other case in which trial [had] been completed, our refusal to apply the [new rule] retroactively [was] not inconsistent with the reasoning of *Powell* "); *Kekona, supra* (prospective application of new principle would be justified by fact that neither Kekona nor any other present criminal defendant would derive benefit of rule, thereby avoiding selective application prohibited by *Powell* ).

■■■ We therefore hold that, although the circuit court "simply acted according to the rule as it was interpreted at the time," *Ikezawa,* 75 Haw. at 223, 857 P.2d at 599, *Powell* requires retroactive application of *Hoey.* Accordingly, we further hold that the trial court erred in excluding from its HRPP Rule 48(b) calculation the twenty-eight day period that elapsed between the filing of Jackson's motion for supervised release and/or bail reduction and its disposition.

2. *The circuit court did not err in excluding the fifteen days attributable to defense counsel's failure to appear at a pretrial status conference.*

Jackson next argues that the circuit court erred in excluding the fifteen days from October 9, 1992, through October 23, 1992, from

its HRPP Rule 48 calculations. A pretrial status conference was originally scheduled for October 9, 1992. Defense counsel failed to appear. As a result, the conference was rescheduled until October 23, 1992. The prosecution characterizes this period as the equivalent of a "continuance," for which it should not be penalized with respect to HRPP Rule 48 calculations. The circuit court, although not expressly terming this period the functional equivalent of an excludable period of delay resulting from a motion for a continuance, concluded that the fifteen days "are excluded certainly because of the no-show[.]"

 We agree with the circuit court's conclusion regarding this fifteen day period. As indicated above, the plain language of HRPP Rule 48 makes clear that the enumerated periods of excludable time set forth in subsection (c) apply only to events and circumstances that cause a "delay" in the commencement of trial. The rescheduling of a pretrial status conference, which is itself a precondition to the commencement of trial, by its very nature delays commencement of trial. Where such delay is attributable to the defense, the delay is excludable under HRPP Rule 48(c). We therefore hold that the circuit court properly excluded the time period from October 9, 1992, through October 23, 1992, from its HRPP Rule 48 calculations.

3. *Because the circuit court erred in denying Jackson's HRPP Rule 48 motion to dismiss, we must vacate his convictions and remand for entry of an order dismissing the charges against him, with or without prejudice, in spite of the fact that doing so will likely subvert the goals sought to be achieved by HRPP Rule 48.*

 Taking into account the twenty-eight days that elapsed during the pendency of Jackson's motion for supervised release and/or bail reduction, which the circuit court improperly excluded, a total of two hundred two non-excludable days [11] elapsed from the date of Jackson's arrest to the commencement of his trial, a "clear violation of the one hundred eighty day limit mandated by HRPP 48(b)." *Hoey*, 77 Hawai'i at 32, 881 P.2d at 519. Thus, the circuit court erred when it denied Jackson's motion to dismiss.

In the past, when a trial court has improperly denied a defendant's motion to dismiss for violation of HRPP Rule 48 and the defendant has been convicted in a subsequently held trial, the appellate court has, without extended analysis, vacated the defendant's conviction and remanded the case for entry of an order of dismissal, with or without prejudice. *See, e.g., Hoey, supra; State v. Wasson,* 76 Hawai'i 415, 879 P.2d 520 (1994); *Ikezawa, supra; State v. Kahawai,* 9 Haw. App. 205, 831 P.2d 936, *cert. denied,* 73 Haw. 627, 834 P.2d 1315 (1992); *State v. Ho,* 7 Haw.App. 516, 782 P.2d 29 (1989); *State v. Hanawahine,* 69 Haw. 624, 755 P.2d 466 (1988); *cf. State v. Dwyer,* 78 Hawai'i 367, 893 P.2d 795 (1995) (remanding for application of Rule 48); *State v. Lau,* 78 Hawai'i 54, 890 P.2d 291 (1995) (remanding for application of Rule 48); *State v. Hutch,* 75 Haw. 307, 861 P.2d 11 (1993) (remanding case for "entry of appropriate [findings of fact]" regarding time periods that may have been excludable); *State v. Caspino,* 73 Haw. 256, 831 P.2d 1334 (1992) (remanding case to trial court for findings regarding excludability of certain time period, and directing, that if time period is found not to be excludable, to dismiss the charges); *State v. English,* 68 Haw. 46, 705 P.2d 12 (1985) (vacating judgment of conviction and remanding for entry

---

**11.** The prosecution also argues that twenty-nine additional days, during which defense counsel was involved in other trials, should have been excluded from the circuit court's HRPP Rule 48 calculations. We disagree. Certainly, HRPP Rule 48(c)(5) is not a proper basis for excluding periods when a defendant's attorney is unavailable because the unavailability of a defendant's attorney is not the functional equivalent of a defendant's own unavailability. *See Hoey,* 77 Hawai'i at 31 n. 15, 881 P.2d at 518 n. 15.

. The subsection properly addressing the unavailability of defense counsel is HRPP Rule 48(c)(8). *Id.* However, because nothing in the record suggests that the commencement of Jackson's trial was delayed due to defense counsel's participation in other trials, the twenty-nine days in question are not excludable under HRPP Rule 48(c). *Id.* at 31, 881 P.2d at 518.

of order of dismissal with prejudice); *State v. Gillis* 63 Haw. 285, 626 P.2d 190 (1981) (reversing defendant's conviction and dismissing charge with prejudice).

Although this approach to dealing with erroneous denials of HRPP Rule 48 motions to dismiss is understandable, we are troubled because vacating convictions on that basis will, in many cases, subvert the goals sought to be achieved by HRPP Rule 48.

The current version of HRPP Rule 48 "is derived from the ABA Standards of Criminal Justice," *State v. Balauro*, 73 Haw. 70, 73, 828 P.2d 267, 269 (1992), in particular, Part II of the chapter setting forth standards relating to speedy trial.[12] *See* II American Bar Association, *Standards for Criminal Justice*, §§ 12–2.1 through –2.3 (2d ed. 1980); American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Speedy Trial*, §§ 2.1–.3 (1967). Its purposes are "to ensure speedy trial for criminal defendants, . . . to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process." *Hoey*, 77 Hawai'i at 29, 881 P.2d at 516 (citations and quotation marks omitted). *See also State v. Coyaso*, 73 Haw. 352, 356, 833 P.2d 66, 68 (1992).

■■ One way in which these goals are achieved is through the threat of sanctions for violation of HRPP Rule 48. As explained in *Kahawai, supra:*

> Rule 48(b)'s sanction of dismissal in criminal cases not tried within the prescribed time frame, unless excludable delay is shown, creates an incentive for trial courts to design and implement efficient and fair procedures to decrease the potential for delay caused by chronic congestion and for the legislature to supply the necessary resources to ensure prompt processing of all criminal cases. Additionally, Rule 48's speedy trial requirement also gives the prosecutor an incentive to design screening procedures to ensure that as much as possible those cases that may be disposed of by means other than trial are removed from the criminal justice system as quickly as possible.

9 Haw.App. at 210–11, 831 P.2d at 939 (footnotes omitted). Thus, it is apparent that the threat of dismissal of charges, with or without prejudice, furthers the purposes of HRPP Rule 48.[13]

■■ However, when cases have proceeded to trial and guilty verdicts have been returned, vacating appellants' convictions would not, in many cases, further any of the purposes of HRPP Rule 48. On remand, it is

---

12. In *State v. English*, 61 Haw. 12, 594 P.2d 1069 (1978), we considered a version of the Hawai'i Rules of Criminal Procedure Rule 48(b), which stated:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the circuit court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

61 Haw. at 23, 594 P.2d at 1076. This rule was based on a version of Rule 48(b) of the Federal Rules of Criminal Procedure and was "regarded as a restatement of the inherent power of the court to dismiss a case for want of prosecution." *State v. Mageo*, 78 Hawai'i 33, 36, 889 P.2d 1092, 1095 (App.1995) (quoting *English*, 61 Haw. at 23, 594 P.2d at 1076). The current version of the rule, however, bears little resemblance to the past version and, based on its genesis in the ABA Standards Relating to Speedy Trial, HRPP Rule 48 cannot now be construed as a codification of the court's inherent power to dismiss.

13. The ABA Standards for Criminal Justice, on which HRPP Rule 48 was based, would require

"absolute discharge," *i.e.*, dismissal with prejudice, if a defendant's trial did not commence within the set time limits. *See Balauro*, 73 Haw. at 74, 828 P.2d at 269. A persuasive argument can be made that dismissal with prejudice is the only effective remedy.

> Dismissal without prejudice cannot be considered a serious sanction. In effect it rewards unacceptable delay with further delay. It is the procedural equivalent of the fox guarding the hen house. . . . Without the sanction of dismissal with prejudice as the usual or preferred result, the prosecution would have no incentive to move to trial to avoid the sanction and the defense would have no incentive to move to trial in order to take advantage of the sanction.

R. Misner, *Speedy Trial Federal and State Practice* 300 (1983).

HRPP Rule 48(b), however, departed from the ABA Standards and expressly authorizes the trial court to dismiss charges with or without prejudice. *See Balauro*, 73 Haw. at 74, 828 P.2d at 269.

likely that the trial court will dismiss such cases without prejudice and that the prosecution will reinstitute the charges, thereby increasing, instead of relieving, congestion in our courts. The prompt processing of cases and the efficiency of our criminal justice process would clearly not be enhanced by vacating a trial court's judgment, only to have the process that led to the judgment repeated. Indeed, such a remedy defeats the speedy disposition of charges against a defendant and disgraces the administration of justice by requiring the retrial of a case that was tried without error in the first instance.[14]

▮▮▮ Furthermore, we note that if an appellant can demonstrate that his or her constitutional right to a speedy trial [15]—the substantive right that HRPP Rule 48, through a procedural mechanism that is "separate and distinct" therefrom, see *Lau*, 78 Hawai‘i at 60, 890 P.2d at 297 (quoting *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981)), seeks to protect— was violated, the appellant will be entitled to have his or her convictions vacated and the charges dismissed with prejudice. *Wasson*, 76 Hawai‘i at 418, 879 P.2d at 523 ("The only

remedy for the violation of an accused's [constitutional] right to speedy trial is dismissal *with prejudice*." (Quoting *State v. Nihipali*, 64 Haw. 65, 67 n. 4, 637 P.2d 407, 408 n. 4 (1981); emphasis in original.)). In the instant case, however, it is clear that Jackson's constitutional right to a speedy trial was not violated: there was a relatively short time between indictment and trial (two hundred seventeen days), Jackson never made a demand for a speedy trial, and, most importantly, Jackson suffered no actual prejudice as a result of the delay in bringing him to trial. *See id.* at 419–23, 879 P.2d at 524–28.[16]

Despite our concerns, in light of the long line of cases that have consistently vacated convictions based on trial courts' erroneous denials of appellants' HRPP Rule 48 motions to dismiss and the fact that HRPP Rule 48 has not been amended as a result of those cases, *cf. Ross v. Stouffer Hotel Co. (Hawai‘i) Ltd.*, 76 Hawai‘i 454, 458, 879 P.2d 1037, 1041 (1994) (declining to overrule prior decision based, in part, on legislature's failure to amend statutes in light of the prior decision), we are constrained to vacate Jack-

**14.** The fact that "the purposes underlying HRPP 48, as well as the reasons for vigorously enforcing the rule, have nothing whatsoever to do with the 'fairness' (or lack thereof)" of a defendant's trial, Concurring op. at 88, also causes us to question the wisdom of the rule in its present form. *Our role in the criminal justice system*, both when we decide cases on appeal and when we promulgate rules pursuant to our statutory authority, *see* HRS § 602–11 (1993), is primarily to ensure that the process is fair. Thus, when a rule does "nothing whatsoever" to advance the fairness of the process, that rule must be subjected to close scrutiny.

**15.** Article I, section 14 of the Hawai‘i Constitution provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" The sixth amendment to the United States Constitution contains identical language.

**16.** Although we do not disagree with the concurring Justice's observation that "the appellate case law in this jurisdiction interpreting the parameters of the constitutional right to a speedy trial, as it has evolved over time, has imposed almost insurmountable barriers to the establishment of a constitutional deprivation," Concurring op. at 91, we cannot agree with his suggestion that "this court's construction of the constitutional right to a speedy trial would be considerably more expansive than it is, but for the presence

of" HRPP Rule 48. *Id.; see also id.* at 15 ("How likely is it, I ask, that this court would have construed the constitutional right to a speedy trial so parsimoniously if there had been no HRPP 48 on which to fall back? I believe that the question answers itself.")

We recognize, of course, that this court is not infallible, *see, e.g., State v. Kwak*, 80 Hawai‘i 297, 909 P.2d 1112 (1995) (opinion on motion for reconsideration), and that it is possible that we have misconstrued the right to a speedy trial guaranteed by article I, section 14 of the Hawai‘i Constitution. However, we are confident that when called upon to interpret the constitutional right to a speedy trial the majority of the members of this court have diligently attempted to perform their duty of ascertaining the intent of the framers and the people who adopted the constitutional provision, *see Convention Center Authority v. Anzai*, 78 Hawai‘i 157, 167, 890 P.2d 1197, 1207 (1995) ("[W]e have long recognized that the Hawai‘i Constitution must be construed with due regard to the intent of the framers and the people adopting it and that the fundamental principle in interpreting a constitutional provision is to give effect to that intent." (Citations, quotation marks, and brackets omitted.)), and have not casually disregarded that duty merely because of the presence of HRPP Rule 48. In this context, the concurring Justice speaks only for himself.

son's conviction and remand for dismissal of the charges against him, with or without prejudice, in the circuit court's discretion. Our concerns, however, prompt us to refer HRPP Rule 48 to the Permanent Committee on Rules of Penal Procedure and Circuit Court Criminal Rules to reassess the effectiveness of the present version of the rule and propose any amendments it deems necessary to prevent the reoccurrence of similar results in the future.[17]

## III. CONCLUSION

For the foregoing reasons, we vacate Jackson's convictions and remand for entry of an order dismissing the charges against him, with or without prejudice, in the discretion of the circuit court.

February 26, 1996.

LEVINSON, Justice, concurring in amended opinion.*

I agree with the majority that "Jackson received a fair trial, free from reversible error, and that sufficient evidence was presented by the prosecution to support his convictions." Majority opinion at 74. I also agree with the majority that "the circuit court erred in concluding that the commencement of [Jackson's] trial was within the time limits set forth in [Hawai'i Rules of Penal Procedure (HRPP)] Rule 48," and that, therefore, "we have no choice but to vacate Jackson's convictions and remand for entry of an order dismissing the charges against him, with or without prejudice, in the circuit court's discretion." *Id.*[1]

I do not, however, share the majority's apparent distaste—as if this court were self-administering a dose of castor oil—for the result that we reach today. Rather, I believe that we are simply following the wisdom of *State v. Ikezawa,* 75 Haw. 210, 857 P.2d 593 (1993), in which this court, citing HRPP 48(b)(1), unanimously acknowledged with approval the indisputable, self-evident, and long-recognized proposition that "[t]he language of HRPP 48 is clear and unambiguous. Criminal charges are to be dismissed if a trial on those charges does not commence within six months from the time of the arrest or of filing of the charges, whichever is sooner"—subject only to excluded periods in computing the time for trial commencement pursuant to HRPP 48(c)—because "[t]he purpose of HRPP 48 is to insure a defendant's right to a speedy trial by requiring that the trial start within six months of the charge or arrest." *Id.* at 214, 222, 857 P.2d at 595, 598.

I take particular issue with the majority's belief that "by vacating Jackson's convic-

---

**17.** In light of our opinion, we expect the committee to consider whether HRPP Rule 48 should be repealed. In addition, we encourage the committee to consider other possible amendments that will enable the rule to better accomplish its goals. For example, the committee might consider amending HRPP Rule 48 to eliminate the possibility of dismissal without prejudice. When the trial court dismisses without prejudice, the charges can be reinstituted by the prosecution in most cases; such a result advances neither the right to a speedy trial nor any of the other administrative goals of HRPP Rule 48. *See also supra* note 13.

If the committee considers an amendment whereby dismissal with prejudice would be the sole remedy for a violation of the rule, it might consider other accompanying amendments. For example, it might consider requiring defendants to demonstrate that they have suffered actual prejudice as a result of the delay before being entitled to such a remedy. With an "actual prejudice" requirement, the rule would more closely comport with the constitutional right to a speedy trial and thereby more effectively ensure compli-

ance with that right. The committee might also consider lengthening the time limits within which cases must be brought, particularly with respect to more serious offenses, so that the societal interest in punishing law violators is not compromised.

The examples of possible amendments set forth above are by no means intended to constitute an exhaustive list of amendments that the committee might consider. They are presented merely to demonstrate that there are a variety of ways in which the rule might be improved.

* This Amended Concurring Opinion corrects page references to the majority opinion filed on February 23, 1996.

**1.** Because I agree with the majority's holding, set forth at section II.A. of the majority opinion, that Jackson's convictions were supported by substantial evidence, a dismissal of the charges without prejudice and a subsequent reinstatement of them would not compromise Jackson's constitutional right against double jeopardy. *See State v. Malufau,* 80 Hawai'i 126, 135, 906 P.2d 612, 621 (1995).

tions[,] the purposes sought to be accomplished by HRPP Rule 48 will likely be subverted," presumably because Jackson "received a fair trial." Majority opinion at 74; *see also id.* at 32–33 (expressing the view that, although the pretrial "threat of dismissal of charges, with or without prejudice, furthers the purposes of HRPP Rule 48 ..., when cases have proceeded to trial and guilty verdicts have been returned, vacating [defendants'] convictions would not, in many cases, further any of the [rule's] purposes"). I do so because the purposes underlying HRPP 48(b), as well as the reasons for vigorously enforcing the rule, have nothing whatsoever to do with the "fairness" (or lack thereof) of the untimely trials to which defendants are subjected when their HRPP 48(b) motions to dismiss are erroneously denied.

Accordingly, neither HRPP 48 in its present—and, in my view, beneficial—form nor its application in this case prompts any particular feelings of enthusiasm in me for the majority's "request that the Permanent Committee on Rules of Penal Procedure and Circuit Court Criminal Rules reassess HRPP 48 and propose any amendments it deems necessary to prevent ... absurd result[s] in the future." *Id.* at 74.[2] There is nothing "absurd" about either HRPP 48 or the results that it generates, and, short of the rule's outright repeal, it is unclear to me what "amendments" the majority has in mind.

## I. *PRIOR CASE LAW*

Citing *State v. Lau,* 78 Hawai'i 54, 60, 890 P.2d 291, 297 (1995), the majority acknowledges that the "constitutional right to a speedy trial" is "the substantive right that HRPP 48, through a procedural mechanism

that is 'separate and distinct,' ... seeks to protect[.]" Majority opinion at 34. Quoting *State v. Hoey,* 77 Hawai'i 17, 29, 881 P.2d 504, 516 (1994), and citing *State v. Coyaso,* 73 Haw. 352, 356, 833 P.2d 66, 68 (1992), the majority further acknowledges that the purposes of HRPP 48 are " 'to ensure speedy trial for criminal defendants, ... to relieve congestion in the trial courts, and to advance the efficiency of the criminal justice process.' " Majority opinion at 85 (ellipsis points in original).

Consistent with the foregoing, the uniform precedent of the appellate courts in this jurisdiction has reflected the following point of view:

(1) HRPP 48(b) is a mandatory rule that, as a non-discretionary matter, obligates the trial courts to dismiss the applicable charges, with or without prejudice in their discretion, in the event of its violation. *State v. Dwyer,* 78 Hawai'i 367, 371, 893 P.2d 795, 799 (1995); *Lau,* 78 Hawai'i at 62, 890 P.2d at 299; *Hoey,* 77 Hawai'i at 28, 881 P.2d at 515; *State v. Wasson,* 76 Hawai'i 415, 418, 879 P.2d 520, 523 (1994); *State v. Hutch,* 75 Haw. 307, 330, 861 P.2d 11, 23 (1993); *Ikezawa,* 75 Haw. at 214, 222, 857 P.2d at 595, 599; *Coyaso,* 73 Haw. at 355, 833 P.2d at 68; *State v. Caspino,* 73 Haw. 256, 257, 831 P.2d 1334, 1335 (1992); *State v. Hanawahine,* 69 Haw. 624, 629, 755 P.2d 466, 469 (1988); *State v. English,* 68 Haw. 46, 47, 50, 705 P.2d 12, 13, 15 (1985) (hereinafter, *English II* ); *State v. Faalafua,* 67 Haw. 335, 336–37, 686 P.2d 826, 828 (1984); *State v. Nihipali,* 64 Haw. 65, 71, 637 P.2d 407, 413 (1981); *State v. Jackson,* 8 Haw.App. 624, 629, 817 P.2d 130, 134 (1991); *State v. Ho,* 7 Haw.App. 516, 517, 782 P.2d 29, 30 (1989); *State v. Mata,* 1 Haw.App. 31, 41, 613 P.2d 919, 926, *cert. denied,* 62 Haw.

---

**2.** For the reasons discussed in section III. of this opinion, I believe that outright repeal of HRPP 48 would be disastrous. *See* majority opinion at 87 n. 17. Although there are cogent policy considerations on both sides of the question, "amending HRPP Rule 48 to eliminate the possibility of dismissal without prejudice," *see id.,* provides food for thought. I have mixed reactions, however, to the "other accompanying amendments" suggested by the majority. *See id.* "[R]equiring defendants to demonstrate that they suffered actual prejudice before being entitled to" an HRPP 48(b) dismissal, *see id.* would, in

my view, substantially destroy HRPP 48 as an amelioration of the almost insurmountable barriers—which the majority agrees that the appellate case law in this jurisdiction has imposed, *see id.* at 86 n. 16—to the establishment of a constitutional deprivation of the right to a speedy trial. *See generally* section III. of this opinion. On the other hand, there may be sound reasons for "lengthening the time limits within which cases must be brought, particularly with respect to more serious offenses, so that the societal interest in punishing law violators is not compromised." *See* majority opinion at 87 n. 17.

690, 613 P.2d 919 (1980); *see* majority opinion at 82;

(2) The relief mandated by HRPP 48(b), which is designed to "ensure" defendants (including Jackson) a speedy trial, is triggered as a *per se* matter when the period of nonexcludable time from arrest or charging to trial exceeds six months (construed as one hundred eighty days), regardless of the reasons for the nonexcludable delays or whether a given defendant can demonstrate actual prejudice. *Hoey*, 77 Hawai'i at 28, 32, 881 P.2d at 515, 519; *Hutch*, 75 Haw. at 330, 861 P.2d at 23; *Ikezawa*, 75 Haw. at 214, 857 P.2d at 595; *Coyaso*, 73 Haw. at 355, 358, 833 P.2d at 69; *Caspino*, 73 Haw. at 257, 831 P.2d at 1335; *Hanawahine*, 69 Haw. at 626, 629, 632, 755 P.2d at 467, 469–70; *English II*, 68 Haw. at 47, 50, 53, 705 P.2d at 13, 15, 17; *Faalafua*, 67 Haw. at 336–37, 686 P.2d at 828; *Nihipali*, 64 Haw. at 71–72, 637 P.2d at 413–14; *State v. Soto*, 63 Haw. 317, 320, 627 P.2d 279, 281 (1981); *State v. Estencion*, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981); *Jackson*, 8 Haw.App. at 629, 817 P.2d at 134; *Ho*, 7 Haw.App. at 517, 519, 782 P.2d at 30–31; *see* majority opinion at 82, 85; and

(3) Defendants, including Jackson, are entitled to have the "substantive right," which is codified in HRPP 48, enforced by the trial courts in the first instance, so that they will be protected against the possibility of an untimely trial, "fair" or otherwise. *Hoey*, 77 Hawai'i at 29, 881 P.2d at 516 ("HRPP 48 is intended not only to ensure speedy trial for criminal defendants, but also to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process. Consistent with these purposes, the language of HRPP 48(c) contemplates only those periods of time that postpone trial. . . . As the drafters of the modern version of HRPP 48 noted, 'the proposed rule crystallizes the concept embodied in the present rule by explicitly stating the timetables to follow and *causes which will be recognized as justifying delays.*'" (Citations, footnote, some internal quotation marks, and brackets omitted.) (Emphasis in original.)); *Hutch*, 75 Haw. at 330 & n. 9, 861 P.2d at 22–23 & n. 9 ("Notwithstanding their status as pretrial motions,

. . . [HRPP 48 motions to dismiss are] unconstrained by the requirements of HRPP 12(c), inasmuch as a motion to dismiss for violation of a defendant's Rule 48(b), HRPP speedy trial right may be filed at any time before the trial commences. . . . It would be absurd to require that an HRPP 48(b) motion to dismiss be subject to the requirement of HRPP 12(c) that pretrial motions be filed within twenty-one days after arraignment. HRPP 48(b) provides, *inter alia*, that a criminal charge must be dismissed if trial is not commenced within six months from the date of arrest or of filing of the charge, whichever occurs first. . . . Obviously, no definitive determination can be made in that regard until trial actually commences." (Citation and internal quotation marks omitted.)); *Coyaso*, 73 Haw. at 355–56, 833 P.2d at 68 ("Although Rule 48 is intended to ensure speedy trials for criminal defendants, its purpose is broader than the constitutional right to a speedy trial as found in the sixth amendment of the U.S. Constitution and article I, § 14 of the [Hawai'i] Constitution. The Rule's purpose is also in furtherance of policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts and to advance the efficiency of the criminal justice process. Unreasonable delay in the determination of criminal action subverts the public good and disgraces the administration of justice, and the power of a court to dismiss a case on its own motion for failure to prosecute with due diligence is inherent and exists independently of statute." (Citation, internal quotation signals, and brackets omitted.)); *English II*, 68 Haw. at 53–54, 705 P.2d at 16–17 ("The purpose of Rule 48 is to ensure an accused a speedy trial, which is separate and distinct from his constitutional protection to a speedy trial. . . . And since the defendant was tried and convicted thereunder, we vacate the judgment of conviction and the sentence and remand the case for entry of an order of dismissal[.]" (Citation and internal quotation signals omitted.)); *Estencion*, 63 Haw. at 268, 625 P.2d at 1043; *State v. Johnson*, 62 Haw. 11, 12 n. 1, 608 P.2d 404, 405 n. 1 (1980) (" '[T]here need not be a deprivation of one's constitutional right to a speedy trial before [Rule 48(b)] may be properly invoked."

(Quoting *State v. English*, 61 Haw. 12, 23, 594 P.2d 1069, 1076 (1979) [*English I* ] )); *see* majority opinion at 85 ("[I]t is apparent that the threat of dismissal of charges, with or without prejudice, furthers the purposes of HRPP Rule 48." (Footnote omitted.)).

## II. *IMPLICATIONS OF THE MAJORITY OPINION*

I read the majority opinion to imply that, until now, this court's application of HRPP 48 to defendants similarly situated to Jackson has been essentially mindless, mechanical, and "without extended analysis." Majority opinion at 84. Specifically, the majority appears to suggest that this court has never proffered a logical basis for vacating a defendant's conviction and remanding his or her case for the entry of an order of dismissal, with or without prejudice, under circumstances where a trial court has improperly denied a defendant's motion to dismiss for violation of HRPP 48 and the defendant has been accorded an otherwise fair trial. *Id.* at 85. Even more specifically, the majority appears to imply that vacating a defendant's conviction following an otherwise fair trial—where the result is dismissal without prejudice, the reinstatement of the charges, and a retrial—is antithetical to the purposes underlying HRPP 48. *Id.* at 85–86. If my understanding is correct, then it would seem that the majority perceives no inherently logical relationship between the plainly mandatory language of the rule and the remedy of dismissal, with or without prejudice, for its violation.

Aside from the fact that the *Hoey* and *English II* courts cited the very purposes advanced by the majority as constituting the theoretical underpinnings of HRPP 48 on their way to vacating the defendants' convictions for violation of the rule, the majority's implied suggestions miss the mark because HRPP 48 is not designed to correct "unfairness" *during* trial; rather, its ultimate purpose is to preclude the *commencement* of untimely trials so that they do not occur at all—"fairly" or "unfairly." [3] In other words, the ultimate purpose of HRPP 48 is to foreclose the interposition of *inexcusable* periods of delay between the initiation of a criminal action and the subsequent commencement of trial. That is precisely why the *English II* court, quoting *Estencion*, 63 Haw. at 268, 625 P.2d at 1043, observed that " '[u]nreasonable delay in the determination of criminal action subverts the public good and disgraces the administration of justice" when it vacated the appellant's conviction because his trial—the "fairness" of which was utterly irrelevant to the court's analysis—was untimely. *English II*, 68 Haw. at 53, 705 P.2d at 17. And that is also why HRPP 48(c) permits only the exclusion of time periods that excusably postpone or delay trial from the HRPP 48(b) six-month calculation. *Hoey*, 77 Hawai'i at 29, 881 P.2d at 516.

In a nutshell, the majority mixes apples and oranges when it seeks to link the redress available to defendants whose "substantive" rights under HRPP 48 have been violated with events that occur during subsequent and untimely trials that never should have commenced in the first place. The injury

---

**3.** As the Intermediate Court of Appeals noted in *State v. Kahawai*, 9 Haw.App. 205, 210–11, 831 P.2d 936, 939, *cert. denied*, 73 Haw. 627, 834 P.2d 1315 (1992),

> Rule 48(b)'s sanction of dismissal in criminal cases not tried within the prescribed time frame, unless excludable delay is shown, creates an incentive for trial courts to design and implement efficient and fair procedures to decrease the potential for delay caused by chronic congestion and for the legislature to supply the necessary resources to ensure prompt processing of all criminal cases. Additionally, Rule 48's speedy trial requirement also gives the prosecutor an incentive to design screening procedures to ensure that as much as possible those cases that may be disposed of [*i.e.*, set-

tled] by other means than trial are removed from the criminal justice system as quickly as possible.

(Footnotes omitted). Although I agree with the majority that "[o]ur role in the criminal justice system, both when we decide cases on appeal and when we promulgate rules pursuant to our statutory authority ..., is primarily to ensure that the process is fair," majority opinion at 86 n. 14, the majority's attribution to me of the notion that HRPP 48 "does 'nothing whatsoever' to advance the fairness of the process," *id.*, is a clear distortion of my view of the rule's function. Contrary to the majority's insinuation, I believe that HRPP 48 is directly linked to "the fairness of the process," albeit not to the fairness of a defendant's trial.

lies in the untimeliness of the commencement of trial and is not undone by the lack of further aggravation.

III. *THE MAJORITY OPINION IMPLIES THAT THE CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, IN THE ABSENCE OF OF HRPP 48(b), WOULD ADEQUATELY PROTECT THE RIGHTS OF CRIMINAL DEFENDANTS UNDER HAWAIʻI LAW.*

Further to its belief that vacating the convictions of defendants whose HRPP 48(b) motions to dismiss have been erroneously denied "will, in many cases, subvert the goals sought to be achieved by HRPP Rule 48," majority opinion at 85, the majority offers the following observation:

Furthermore, we note that if [a defendant] can demonstrate that his or her constitutional right to a speedy trial—the substantive right that HRPP Rule 48, through a procedural mechanism that is "separate and distinct" therefrom, seeks to protect— was violated, the [defendant] will be entitled to have his or her convictions vacated and the charges dismissed with prejudice.

*Id.* at 86 (citations and footnote omitted). The only inference that I can draw from the majority's observation is that it suspects, given the constitutional protection,[4] that HRPP 48, in its present form, is at best unnecessary and at worst obstructive of the effective administration of criminal justice.

I will not undertake in this opinion to chronicle the development—with which the majority is as familiar as I—of HRPP 48 in its present form. I do, however, offer my own observation: obviously, this court perceived a need for the rule when it promulgated it, notwithstanding the provisions of the sixth amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution (1978), and did not intend to engage in a pointless exercise.

What I *will* undertake in this opinion, on the other hand, is to demonstrate that the appellate case law in this jurisdiction interpreting the parameters of the constitutional right to a speedy trial, as it has evolved over time, has imposed almost insurmountable barriers to the establishment of a constitutional deprivation. I also suggest that this court's construction of the constitutional right to a speedy trial would be considerably more expansive than it is, but for the presence of a robust and self-executing rule of court—of our own making—that vindicates the same substantive right. *Cf. English I,* 61 Haw. at 23, 594 P.2d at 1076 ("there need not be a deprivation of one's constitutional right to speedy trial before [Rule 48] may be properly invoked").

Recently, in *Dwyer,* we reaffirmed our adherence to the long-standing formulation of the core analytical framework within which we have evaluated claims of the denial of the constitutional right to a speedy trial:

[W]hether an accused's right to a speedy trial has been violated is determined by applying the four-part test articulated in *Barker v. Wingo,* 407 U.S. 514 [92 S.Ct. 2182, 33 L.Ed.2d 101] ... (1972). The four factors to be considered are: (1) length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) prejudice to the defendant. *Id.* at 530 [92 S.Ct. at 2192.]

*Dwyer,* 78 Hawaiʻi at 371, 893 P.2d at 799. In *English I,* we quoted *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193, for the proposition (the "*Barker/English I* proposition") that "none of these four factors is to be regarded 'as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial,' but rather, 'they are related factors and must be considered together with such other circumstances as may be relevant.'" *English I,* 61 Haw. at 16 n. 6, 594 P.2d at 1073 n. 6; *see also Mata,* 1 Haw.App. at 39, 613 P.2d at 925 ("The presence or absence of any single factor is not dispositive." (Citing *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193)).

Notwithstanding the lip service paid to the *Barker/English I* proposition in *Lau,* 78 Hawaiʻi at 62, 890 P.2d at 299, and *Wasson,* 76

---

**4.** The sixth amendment to the United States Constitution provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" Article I, section 14 of the Hawaiʻi Constitution (1978) contains the identical language.

Hawai'i at 419, 879 P.2d at 524, the truth is that we abandoned it in *Coyaso,* 73 Haw. at 356, 833 P.2d at 68, by decreeing that "[p]rejudice to the defendant is a mandatory factor in determining whether dismissal is warranted on constitutional speedy trial grounds." Thus, perhaps unwittingly, we sanctified the notion that a showing of actual prejudice is a necessary precondition to a finding of a denial of the constitutional right to a speedy trial, and the results reached in our subsequent case law have been consistent with that premise. *See Dwyer, Lau,* and *Wasson.* Indeed, I am unaware of a single case in which this court has perceived a constitutional violation of the right in the absence of actual prejudice.

Moreover, even though the "length of delay serves as a triggering mechanism to the *Barker* analysis," *Nihipali,* 64 Haw. at 68, 637 P.2d at 411, and "delays of at least six months [are] sufficient to warrant an inquiry into the other *Barker* factors," *Lau,* 78 Hawai'i at 63, 890 P.2d at 300, the length of the delay—the first *Barker* factor—is virtually insignificant with respect to the bottom line. *See, e.g., Dwyer* (finding no constitutional deprivation despite delay in excess of thirty-two months); *Lau* (finding no constitutional deprivation despite twenty-four month delay); *Wasson* (finding no constitutional deprivation despite delay of twenty-six and one-half months).

The second *Barker* factor—the reasons for the delay—is equally insignificant. *See, e.g., Dwyer* (finding no constitutional deprivation despite holding that application of the factor weighed in defendant's favor); *Lau* (same); *Wasson* (same).

This court's view of the third *Barker* factor—assertion of the right to a speedy trial—has undergone an especially curious metamorphosis. In *Nihipali,* 64 Haw. at 70 n. 5, 637 P.2d at 412 n. 5, we articulated the intuitive notion that a defendant's act of filing a motion to dismiss on constitutional speedy trial grounds is "tantamount to an assertion of his [or her] right to a speedy trial." (Citations omitted.) That is no longer the case. Now, " 'unless the motion to dismiss is accompanied in some way by an alternative demand, even if made implicitly, for a speedy

trial, it does not necessarily indicate that the defendant actually wants to be tried immediately.' " *Dwyer,* 78 Hawai'i at 371–72, 893 P.2d at 799–800 (quoting *Wasson,* 76 Hawai'i at 421, 879 P.2d at 526). In other words, if a defendant "fails to identify any other conduct evidencing a desire to be brought to trial immediately, we [will] not [be] convinced that his [or her] motion to dismiss on speedy trial grounds [is] the equivalent of a demand for a speedy trial." *Id.* at 372, 879 P.2d at 800. "Thus, in the absence of some other indication that a defendant making a motion to dismiss actually desires a speedy trial, the motion, standing alone, does not weigh in his or her favor." *Wasson,* 76 Hawai'i at 421, 879 P.2d at 526.

We assess the fourth *Barker* factor—actual prejudice to the defendant by virtue of pretrial delay—in light of

> "the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past."

*Lau,* 78 Hawai'i at 64, 890 P.2d at 301 (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193).

The first interest—preventing oppressive pretrial incarceration—speaks for itself.

As to the second interest—minimizing the accused's anxiety and concern—, we have had the following to say: " '[T]he government will prevail unless the defendant offers objective, contemporaneous evidence of anxiety, such as prompt and persistent assertion of the desire for a speedy trial coupled with a demonstrable basis for the court's believing the delay is traumatic.' " *Id.* at 65, 890 P.2d at 302 (quoting *State v. Ferraro,* 8 Haw.App. 284, 300, 800 P.2d 623, 632 (1990)). In this

connection, I note that, insofar as there can be no showing of prejudice based on the "minimization of anxiety" interest in the absence of "prompt and persistent assertion of the desire for a speedy trial," the third and fourth *Barker* factors have been effectively folded together. And, as we have seen, the invocation of the right to a speedy trial in a motion to dismiss is no longer "tantamount" to the "assertion" of that right. Such being the case, it will be the titanically "anxious" defendant whose constitutional right to a speedy trial is deemed to have been denied on that ground.

With respect to the "most serious" interest—limiting the possibility that the defense will be impaired—, we have held that the mere possibility or probability that "any witnesses will ... be unable to recall accurately the events preceding [a defendant's] arrest due to the passing of time" does not demonstrate constitutionally prejudicial pretrial delay. *Lau,* 78 Hawai'i at 65, 890 P.2d at 302. It would be unhealthy, I think, to hold one's breath while waiting for a case of constitutionally prejudicial pretrial delay based on this standard.

How likely is it, I ask, that this court would have construed the constitutional right to a speedy trial so parsimoniously if there had been no HRPP 48 on which to fall back? I believe that the question answers itself.[5]

And if this court renders HRPP 48(b) a rule without a remedy, as I fear that it is preparing to do, what will become of the "incentive for trial courts to design and implement efficient and fair procedures to decrease the potential for delay caused by chronic congestion and for the legislature to supply the necessary resources to ensure prompt processing of all criminal cases"? *See State v. Kahawai,* 9 Haw.App. 205, 210–11, 831 P.2d 936, 939, *cert. denied,* 73 Haw. 627, 834 P.2d 1315 (1992). And what will become of the prosecution's "incentive to design screening procedures to ensure that as much as possible those cases ... are removed from the criminal justice system as quickly as possible"? *See id.* at 211, 831 P.2d at 939. I believe that these questions answer themselves as well.

## IV. CONCLUSION

Based on the foregoing analysis, I oppose the dilution of the protections afforded by HRPP 48.

---

**5.** Because I am regrettably alone in concurring separately, the majority is correct that I am expressing only my opinion in this regard. *See* majority opinion at 86 n. 16. Nevertheless, I hasten to add that I share the majority's confidence that it has always "diligently attempted" in the past—as it will continue to strive in the future—to discharge the task of constitutional interpretation with integrity and in good faith. *See id.* I certainly do not imply that this court has ever "casually disregarded" its duty with respect to the construction of the constitutional right to a speedy trial. *See id.* As noted *supra* at 11 of this opinion, however, I do suggest that the presence of a robust and self-executing HRPP 48, which was designed to protect the "substantive" right to a speedy trial, has facilitated this court's restrictive interpretation of the rule's constitutional parent. In offering this suggestion, I mean no offense, but merely undertake to state what I perceive to be the obvious.